PATRICIA O. ECKER, ADMINISTRATRIX (ESTATE OF
ROBERT W. ECKER) *v.* TOWN OF
WEST HARTFORD ET AL.
(12971)

PETERS, C. J., SHEA, CALLAHAN, SPALLONE and NORCOTT, Js.

Argued May 6—decision released September 8, 1987

*Allan B. Taylor,* with whom were *Frederick W. Danforth, Jr.,* and, on the brief, *Marjorie Wilder,* corporation counsel, for the appellants (named defendant et al.).

*Theodore I. Koskoff,* with whom were *Bernard Pitterman* and, on the brief, *Carey B. Reilly* and *Joan C. Harrington,* for the appellee (plaintiff).

CALLAHAN, J. The plaintiff Patricia O. Ecker, as administratrix of the estate of her husband Robert W. Ecker, brought this wrongful death action pursuant to General Statutes § 52-555 for injuries her deceased husband received when he was struck by a wooden canopy which fell from a Caldor building.[1] The defendants include: (1) Henry Porter, doing business as Henry Porter Associates, the owner and lessor of the land and building; (2) Consolidated Engineers and Constructors, Inc., the contractors who designed, constructed and installed the canopy; (3) Charles McCarthy, individually and as the building inspector of the town of West Hartford, who issued the certificate of occupancy for the Caldor building; and (4) the town of West Hartford, which employed Charles McCarthy. Caldor, Inc., filed an intervening complaint against the plaintiff and the

---

[1] "[General Statutes] Sec. 52-555. ACTIONS FOR INJURIES RESULTING IN DEATH. In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of."

defendants for monies it had paid in accordance with the provisions of the Connecticut Workers' Compensation Act.

After a jury verdict which was rendered in favor of the plaintiff in the amount of $1,156,000 against McCarthy as building inspector and the town of West Hartford (hereinafter the defendants), the trial court rendered a final judgment thereon.[2] The defendants took a timely appeal to the Appellate Court, and the appeal was transferred to this court pursuant to Practice Book § 4023.[3] On appeal, the defendants claim the trial court erred: (1) in refusing to dismiss this case for lack of subject matter jurisdiction; (2) in submitting the issue of pain and suffering to the jury; (3) in its charge

[2] The jury also found in favor of the defendant Consolidated Engineers and Constructors, Inc. No appeal has been filed in that regard. The plaintiff's claims against Henry Porter, doing business as Henry Porter Associates, were resolved outside of court. Additionally, the plaintiff was precluded from pursuing any common law claims against Caldor, Inc., the employer of the plaintiff's decedent, because of the exclusivity provisions of the Connecticut Workers' Compensation Act. See General Statutes § 31-284 (a).

[3] "[Practice Book] Sec. 4023. —IN GENERAL

"The supreme court may transfer to itself a cause in the appellate court. Except for any matter brought pursuant to its original jurisdiction under the constitution, the supreme court may transfer a cause or class of causes from itself, including any cause or class of causes pending on July 1, 1983, to the appellate court. The court to which a cause is transferred has jurisdiction.

"There shall be no fee on such transfer, but an appellant other than the state or a party for whom fees, costs and security have been waived pursuant to Sec. 4016 shall within twenty days file in the trial court a substituted recognizance in the amount of $500. The chief clerk of the supreme court shall notify all parties and the clerk of the trial court that the appeal has been transferred. A case so transferred shall be entered upon the docket of the court to which it has been transferred and the chief clerk shall require the parties to take such steps as may be necessary to make the appeal conform to the rules of the court to which it has been transferred.

"Upon the transfer of an appeal, the time within which the briefs or other documents must be filed shall be governed by the rules of the court to which the case has been transferred, except that such time limit for the document next to be filed shall not be less than thirty days from issuance of the notice of transfer."

to the jury regarding the duties of a building inspector and the application of governmental immunity; and (4) in allowing Caldor, Inc., the intervening plaintiff, four peremptory challenges. We find error as to the defendants' first claim and need not address the other claims raised.

The jury could reasonably have found the following facts. On February 11, 1981, the plaintiff's decedent, while working as a shipping clerk for Caldor, Inc., in its department store located at 983 New Britain Avenue, West Hartford, was injured when a wooden canopy pulled away from the store wall in the area of the loading dock and fell on him.[4] He subsequently was taken to Hartford Hospital while in a coma, where he died the next day.

In the summer of 1973, renovations had been made to the Caldor building under a building permit issued by McCarthy, the chief building inspector for the town of West Hartford, to Henry Porter, doing business as Henry Porter Associates, the owner and lessor of the building at 983 New Britain Avenue. The permit had been signed by Edward Dombrowski, also a town building inspector, after the plans for the renovations had been reviewed and revised by Joseph Callahan, another town bulding inspector. Consolidated Engineers and Constructors, Inc. (Consolidated), was the general contractor in charge of the renovations.

During the course of the renovations, the West Hartford building department had made both general and specific inspections of the construction site on at least thirty-five recorded occasions, as required by the Con-

[4] The wooden canopy was attached to the wall of the building over the loading dock area to protect employees and merchandise from bad weather during the unloading of trucks. The canopy measured twenty-four feet in length with a four foot overhang and weighed approximately 2100 pounds.

necticut State Building Code §§ 111.1 and 111.11.[5] The inspections were conducted by Joseph Callahan, Thomas Kelley, Donald Soccoli and Thomas Bascetta. In addition, McCarthy did a general walk-through inspection on October 9, 1973, to check for any "obvious glaring faults."

On October 30 and 31, 1973, further inspections of the building were conducted by Callahan and Soccoli for the purpose of determining whether a certificate of occupancy should be issued. Both inspectors had noted a number of items that had to be remedied, but both gave their approval to McCarthy to issue a temporary certificate of occupancy on October 31, 1973. McCarthy had also conducted a general inspection of the premises from his car by driving around the perimeter of the building, "primarily looking for a finished grade." Upon completion of this inspection and having conferred with the other inspectors, McCarthy issued the temporary certificate of occupancy on the same day and the store opened to the public on November 1, 1973. The only other inspections of the building were done in late November, 1973, by Callahan, Kelley and Soccoli merely to check if the unfinished items listed on the temporary certificate of occupancy had been completed.[6] Thereafter, McCarthy issued the per-

[5] "[Connecticut State Building Code §] 111.1 PRELIMINARY INSPECTION: Before issuing a permit, the building official shall examine or cause to be examined all buildings, structures and sites for which an application has been filed for a permit to construct, enlarge, alter, repair, remove, demolish or change the use thereof; and he shall maintain a record of all such examinations and inspections and of all violations of the Basic Code."

"[Connecticut State Building Code §] 111.11 CONSTRUCTION INSPECTION: The building official shall inspect all work performed under the provisions of the Basic Code and make continuous special inspections when so required by the Code. The permit holder or his agent shall notify the building official when the work is ready for inspection, giving not less than twenty-four hour notice.

[6] In addition to his recorded visit, McCarthy testified that he made additional general visits or inspections on six to eight other occasions where he did not record them. He did not testify that any of these occurred after October 31, 1973.

manent certificate of occupancy on November 30, 1973. From November 30, 1973, until February 11, 1981, when the plaintiff's decedent was injured, the building department had not received complaints about the Caldor facility and had not conducted a general inspection of it.

The wooden canopy was unquestionably in violation of §§ 315.1[7] and 315.3[8] of the Connecticut State Building Code in that no permit had been issued, it had been constructed of wood, not metal, and it had no vertical supports or braces. Despite the fact that neither the initial nor the final and revised plans for the renovations showed the canopy, it was erected over the loading dock some time prior to the opening of the store on November 1, 1973.[9]

This action was filed by the plaintiff on February 17, 1982. An amended complaint was filed on July 27, 1983, which the municipal defendants answered on October 17, 1983, alleging only the special defense of governmental immunity for McCarthy. On February 13,

---

[7] "[Connecticut State Building Code §] 315.0 AWNINGS AND CANOPIES.

"[§] 315.1 PERMIT: A permit shall be obtained from the building official for the erection, repair or replacement of any fixed awning, canopy or hood except as provided in section 315.11, and for any retractable awning located at the first story level and extending over the public street or over any portion of a court or yard beside a building serving as a passage from a required exitway or exitway discharge to a public street."

[8] "[Connecticut State Building Code §] 315.3 CANOPIES. Canopies shall be constructed of a metal framework, with an approved covering, attached to the building at the inner end and supported at the outer end by not more than two (2) stanchions with braces anchored in an approved manner and placed not less than two (2) feet in from the curb line. The horizontal position of the framework shall be not less than eight (8) feet nor more than twelve (12) feet above the sidewalk and the clearance between the covering or valance and the sidewalk shall be not less than seven (7) feet. The width of canopies shall not exceed eight (8) feet."

[9] Daniel Harrison, Jeffrey O'Hara and Mark A. Uccello were employees of Caldor, Inc., at the time of the incident and each testified that the canopy existed on the building prior to the store opening to the public on November 1, 1973.

1986, the first day of trial, the defendants filed a request to amend their answer to raise by way of special defense, for the first time, the three year time limitation contained within General Statutes § 52-555. The trial court denied the request on the grounds that it was untimely and substantially prejudicial to the plaintiff. On February 19, 1986, the defendants filed a motion to reconsider the denial of the request to amend their answer which was also denied by the trial court on February 20, 1986. Thereafter, on March 7, 1986, the defendants moved for a directed verdict, pursuant to Practice Book § 321,[10] on the ground that, inter alia, the action was time barred under § 52-555. The trial court denied this motion. On March 26, 1986, two days after the jury rendered a verdict in favor of the plaintiff, the defendants renewed this claim by way of a motion to dismiss, a motion to set aside the verdict and a motion for judgment notwithstanding the verdict. On the same day, the trial court denied the motions and rendered judgment upon the jury verdict.

---

[10] "[Practice Book] Sec. 321. —RESERVATION OF DECISION ON MOTION FOR DIRECTED VERDICT

"Whenever a motion for a directed verdict made at any time after the close of the plaintiff's case in chief is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. After the acceptance of a verdict and within the time stated in Sec. 320 for filing a motion to set a verdict aside, a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment rendered in accordance with his motion for a directed verdict; or if a verdict was not returned such party may move for judgment in accordance with his motion for a directed verdict within the aforesaid time after the jury have been discharged from consideration of the case. If a verdict was returned the court may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

The principal issue in this appeal is whether a trial court has jurisdiction over a wrongful death action brought more than "three years from the date of the act or omission complained of" as required by § 52-555. The defendants claim that § 52-555 created a new statutory cause of action that did not exist at common law in Connecticut, and thus, must be strictly construed and cannot be extended or enlarged by judicial construction. The defendants further argue that because the statute creates the right of action, the time limitation contained therein is a limitation upon the right itself, and as such, is jurisdictional in nature and cannot be waived. Accordingly, the defendants claim the court lacked jurisdiction over this action which was not brought within the three year period of limitation set forth in the statute. We agree with this contention.

## I

Recently in the case of *Ladd* v. *Douglas Trucking Co.*, 203 Conn. 187, 191–92, 523 A.2d 1301 (1987), this court reiterated the one hundred and thirty-one year adherence by the courts of this state to the almost unanimously held principle of law, as first proclaimed by Lord Ellenborough in the case of *Baker* v. *Bolton,* 1 Camp. 493, 170 Eng. Rep. 1033 (K.B. 1808), that there is no civil right of action at common law for damages resulting from the death of a human being. See *Grody* v. *Tulin,* 170 Conn. 443, 448, 365 A.2d 1076 (1976); *Foran* v. *Carangelo,* 153 Conn. 356, 359, 216 A.2d 638 (1966); *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 668–69, 136 A.2d 918 (1957); *Baker* v. *Baningoso,* 134 Conn. 382, 385, 58 A.2d 5 (1948); *Lucier* v. *Hittleman,* 125 Conn. 635, 636, 7 A.2d 647 (1939); *Willoughby* v. *New Haven,* 123 Conn. 446, 454, 197 A. 85 (1937); *Flynn* v. *New York, N.H. & H. R. Co.,* 111 Conn. 196, 200, 149 A. 682 (1930), aff'd, 283 U.S. 53, 51 S. Ct. 357, 75 L. Ed. 837 (1931); *Korb* v. *Bridgeport Gas Light Co.,* 91 Conn. 395, 397, 99 A. 1048 (1917); *DeMartino* v.

*Siemon,* 90 Conn. 527, 528, 97 A. 765 (1916); *Kling* v. *Torello,* 87 Conn. 301, 306, 87 A. 987 (1913); *Radezky* v. *Sargent & Co.,* 77 Conn. 110, 112, 58 A. 709 (1904); *Broughel* v. *Southern New England Telephone Co.,* 72 Conn. 617, 620, 45 A. 435 (1900); *Goodsell* v. *Hartford & New Haven R.R. Co.,* 33 Conn. 51, 55 (1865); *Murphy* v. *New York & New Haven R.R. Co.,* 30 Conn. 184, 188 (1861); *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven R.R. Co.,* 25 Conn. 265, 273 (1856); *Isaac* v. *Mount Sinai Hospital,* 3 Conn. App. 598, 601–602, 490 A.2d 1024, cert. denied, 196 Conn. 807, 494 A.2d 904 (1985); *Shattuck* v. *Gulliver,* 40 Conn. Sup. 95, 97, 481 A.2d 1110 (1984); *Leland* v. *Chawla,* 39 Conn. Sup. 8, 10, 467 A.2d 439 (1983); *Cofrancesco* v. *Smith,* 29 Conn. Sup. 139, 141–42, 275 A.2d 608 (1971); *Gorke* v. *Le Clerc,* 23 Conn. Sup. 256, 257–58, 181 A.2d 448 (1962); *Perlstein* v. *Westport Sanitarium Co.,* 11 Conn. Sup. 117, 119 (1942); see also D. Wright & J. Fitzgerald, Connecticut Law of Torts (2d Ed.) § 171 (e), p. 367. With only a few exceptions, courts in America have almost universally accepted, and continue to accept, "the rule that a civil action for wrongful death was not recognized at common law, and that no such cause of action may be maintained except under the terms and authority of a statute." 61 A.L.R.3d 906, 909, and authorities cited therein, 909–10 n.3, and Sup. 59. For recent federal court cases applying state law, see *Garland* v. *Herrin,* 724 F.2d 16, 20 (2d Cir. 1983) (New York law); *Fisk* v. *United States,* 657 F.2d 167, 170 (7th Cir. 1981) (Indiana law); *Aspinall* v. *McDonnell Douglas Corporation,* 625 F.2d 325, 327 (9th Cir. 1980) (California law); *Theberge* v. *Transportation Systems,* 611 F. Sup. 368, 371 (D.N.H. 1984) (New Hampshire law); *Jaeger* v. *Raymark Industries, Inc.,* 610 F. Sup. 784, 788 (E.D. Wis. 1985) (Wisconsin law); *Miers* v. *Central Mine Equipment Co.,* 604 F. Sup. 502, 508 (D. Neb. 1985) (Nebraska law); *Bethel* v. *Janis* 597 F. Sup. 56,

59 (D.S.D. 1984) (South Dakota law); *Ritter* v. *Aspen Skiing Corporation,* 519 F. Sup. 907–908 (D. Colo. 1981) (Colorado law); *Higgins* v. *Washington Metropolitan Area Transit Authority,* 507 F. Sup. 984, 986 (D.D.C. 1981) (District of Columbia law); *Holzsager* v. *Warburton,* 452 F. Sup. 1267, 1270 (D.N.J. 1978) (New Jersey law); *Matter of Tonty,* 52 Bankr. 18, 19 (W.D. Pa. 1985). For recent state court decisions, see *Greater Southeast Community Hospital* v. *Williams,* 482 A.2d 394, 396 (D.C. App. 1984); *Everett* v. *Trunnell,* 105 Idaho 787, 789, 673 P.2d 387 (1983); *Andis* v. *Hawkins,* 489 N.E.2d 78, 81 (Ind. App. 1986); *Ascani* v. *Hughes,*470 So. 2d 207, 209 (La. App. 1985); *Stiffelman* v. *Abrams,* 655 S.W.2d 522, 536 (Mo. 1983); *Johnson* v. *Morias River Electric Co-op, Inc.,* 687 P.2d 668, 670 (Mont. 1984); *In re Estate of Infant Fontaine,* 128 N.H. 695, 698, 519 A.2d 227 (1986); *Young* v. *Robertshaw Controls Co.,* 104 App. Div. 2d 84, 88, 481 N.Y.S.2d 891 (1984); *Taylor* v. *Black & Decker Mfg. Co.,* 21 Ohio App. 3d 186, 188, 486 N.E.2d 1173 (1984); *Gleason* v. *Oklahoma City,* 666 P.2d 786, 788–89 (Okla. App. 1983); *Taylor* v. *Parr,* 678 S.W.2d 527, 529 (Tex. App. 1984); *Weiss* v. *Regent Properties, Ltd.,* 118 Wis. 2d 225, 230, 346 N.W.2d 766 (1984); see also 25A C.J.S. 582–84 n.69, Death § 13, and Sup. 77; 22 Am. Jur. 2d 606 n.3, Death § 1. Although this rule has been subject to some criticism over its long history, this court is not prepared to hold contrary to the long line of Connecticut cases and the overwhelming weight of authority throughout the country.

The plaintiff cites the four line opinion in the case of *Cross* v. *Guthery,* 2 Root (Conn.) 90 (1774), in support of her position that a wrongful death action at common law existed in Connecticut. Although the court, in that case, upheld a jury verdict in favor of the plaintiff, who sought damages for medical expenditures he incurred and the deprivation of his wife's company;

id., 91;[11] the *Cross* case has been rejected by every Connecticut decision which has since addressed the issue. Therefore we view the case of *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven R.R. Co.*, supra, which overruled *Cross*, not as having made a change in Connecticut law, but rather, as having recognized that the *Cross* court was in error. See *Mickel* v. *New England Coal & Coke Co.*, 132 Conn. 671, 676, 47 A.2d 187 (1946), and authorities cited therein.

The plaintiff also relies on *Moragne* v. *States Marine Lines, Inc.*, 398 U.S. 375, 90 S. Ct. 1772, 26 L. Ed. 2d 339 (1970), and the three state court decisions of *Gaudette* v. *Webb*, 362 Mass. 60, 284 N.E.2d 222 (1972), *Wilbon* v. *D. F. Bast Co.*, 73 Ill. 2d 58, 382 N.E.2d 784 (1978), and *Haakanson* v. *Wakefield*, 600 P.2d 1087 (Alaska 1979), which were decided in reliance on *Moragne*, to support her position that a wrongful death action existed at common law. We do not find these cases persuasive.

The *Moragne* case involved a wrongful death action brought by the wife of a seaman, who was killed in Florida state territorial waters. The Florida wrongful death statute did not encompass the unseaworthiness of a vessel as a basis of liability, whereas federal maritime law provided only for a wrongful death action where the death had occurred on the high seas, and not within the three mile area designated as state ter-

---

[11] "In the early case of *Cross* v. *Guthery*, 2 Root (Conn.) 90 (1794), this court upheld a verdict in favor of the plaintiff husband who had sought damages for loss of the service, company and consortship of his deceased wife and also for his expenses in a malpractice action based upon the breach of a contract he had made with the defendant physician to perform breast surgery upon the wife of the plaintiff with requisite skill and care." *Ladd* v. *Douglas Trucking Co.*, 203 Conn. 187, 192 n.3, 523 A.2d 1301 (1987). Although the case involved the death of the plaintiff's wife, the action appears to have sounded in contract. Therefore we do not read the *Cross* case as having clearly established that a wrongful death action existed at common law in Connecticut.

ritorial waters. Thus, in light of this gap that existed between federal maritime law and Florida's death statute, the *Moragne* court addressed the limited issue of "whether *The Harrisburg,* 119 U.S. 199, 7 S. Ct. 140, 30 L. Ed. 358 [1886], in which this court held in 1886 that maritime law does not afford a cause of action for wrongful death, should any longer be regarded as acceptable law." *Moragne* v. *States Marine Lines, Inc.,* supra, 375–76. Although Justice Harlan did examine and criticize the common law rationales for denying a recovery for death; id., 381–88; he did not go so far as to hold that a wrongful death action existed or exists today under nonmaritime common law. In fact, in addressing the nonrecovery at common law issue, Justice Harlan stated: "regardless of the viability of the rule in 1886 as applied to American land-based affairs, it is difficult to discern an adequate reason for its extension to admiralty, a system of law then already differentiated in many respects from the common law." Id., 381. Justice Harlan acknowledged that "[m]aritime law had always, in this country as in England, been a thing apart from the commmon law." Id., 386. He also acknowledged that recovery for wrongful death had become the general rule in American law, and its denial the exception solely by way of "the work of the legislatures." Id., 393. Thus, the *Moragne* decision only extends the *general maritime law* to allow the bringing of a wrongful death action where the death was brought about by the unseaworthiness of a vessel and occurred within state territorial waters. Id., 401–402, 405–406; see also *Offshore Logistics, Inc.* v. *Tallentire,* 477 U.S. 207, 215–16, 106 S. Ct. 2485, 91 L. Ed. 2d 174 (1986); *Complaint of Patton-Tully Transportation Co.* 797 F.2d 206, 212 (5th Cir. 1986); *Casaceli* v. *Martech International, Inc.,* 774 F.2d 1322, 1328 (5th Cir. 1985); *Evich* v. *Connelly,* 759 F.2d 1432, 1433 (9th Cir. 1985).

The plaintiff cites decisions from only three states that have held that, on the basis of *Moragne,* a right

of action for wrongful death existed at common law. See *Haakanson* v. *Wakefield,* supra; *Wilbon* v. *D. F. Bast Co.,* supra; *Gaudette* v. *Webb,* supra. The Ohio Court of Appeals, on the other hand, has specifically refused to follow the *Moragne* and *Gaudette* rationale and has acknowledged the long standing recognition that no wrongful death action existed at common law. See *Taylor* v. *Black & Decker Mfg. Co.,* supra, 188.

On the basis of the long line of Connecticut cases and the overwhelming weight of authority cited above, we hold that no action for wrongful death existed at common law or exists today in Connecticut except as otherwise provided by the legislature.

## II

Given the above holding, the issue now becomes: "What is the nature of the three year time limitation contained within General Statutes § 52-555?" In pertinent part General Statutes § 52-555 provides: "no action shall be brought to recover such damages and disbursements but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of." The defendants argue that this time limitation is a substantive element of the right itself, and thus is jurisdictional and cannot be waived. We agree.

In deciding whether a time limitation contained within a statute is subject to waiver, we must determine whether the limitation is substantive or procedural in nature. See *Moore* v. *McNamara,* 201 Conn. 16, 22–23, 513 A.2d 660 (1986); *Orticelli* v. *Powers,* 197 Conn. 9, 15, 495 A.2d 1023 (1985). " 'A statute of limitations is generally considered to be procedural, especially where the statute contains only a limitation as

to time with respect to a right of action and does not itself create the right of action. *Jones Destruction, Inc.* v. *Upjohn,* 161 Conn. 191, 195, 286 A.2d 308 (1971).' *Collucci* v. *Sears, Roebuck & Co.,* 585 F. Sup. 529, 532 (D. Conn. 1984)." *Moore* v. *McNamara,* supra, 22. Where the limitation is deemed procedural and personal it is subject to being waived unless it is specifically pleaded because the limitation is considered merely to act as a bar to a remedy otherwise available. See *Moore* v. *McNamara,* supra; *Orticelli* v. *Powers,* supra; *L. G. DeFelice & Son, Inc.* v. *Wethersfield,* 167 Conn. 509, 511, 356 A.2d 144 (1975); *Hillier* v. *East Hartford,* 167 Conn. 100, 106, 355 A.2d 1 (1974).

Where, however, a specific time limitation is contained within a statute that creates a right of action that did not exist at common law, then the remedy exists only during the prescribed period and not thereafter. See *Moore* v. *McNamara,* supra, 22–23; *Orticelli* v. *Powers,* supra; *L. G. DeFelice & Son, Inc.* v. *Wethersfield,* supra; *Hillier* v. *East Hartford,* supra; *Diamond National Corporation* v. *Dwelle,* 164 Conn. 540, 547, 325 A.2d 259 (1973). In such cases, the time limitation is not to be treated as an ordinary statute of limitation, but rather is a limitation on the liability itself, and not of the remedy alone. *Vecchio* v. *Sewer Authority,* 176 Conn. 497, 504–505, 408 A.2d 254 (1979); see *American Masons' Supply Co.* v. *F. W. Brown Co.,* 174 Conn. 219, 224, 384 A.2d 378 (1978); *Hillier* v. *East Hartford,* supra; *DeMartino* v. *Siemon,* supra, 528–29; *Cofrancesco* v. *Smith,* supra, 142; 22 Am. Jur. 2d 633, Death § 35. The courts of Connecticut have repeatedly held that, under such circumstances, the time limitation is a substantive and jurisdictional prerequisite, which may be raised at any time, even by the court sua sponte, and may not be waived. See *Moore* v. *McNamara,* supra, 23; *Orticelli* v. *Powers,* supra; *American Masons' Supply Co.* v. *F. W. Brown Co.,* supra; *L. G. DeFelice*

& Son, Inc. v. Wethersfield, supra; Diamond National
Corporation v. Dwelle, supra; Wilbur v. Mount Sinai
Medical Center, 3 Conn. App. 284, 288, 487 A.2d 568
(1985).

Although this court has not previously addressed
the jurisdictional nature of the time limitations con-
tained within § 52-555, the lower courts of Connecti-
cut have held the time limitation to be jurisdictional.
See Cofrancesco v. Smith, supra, 142, 145; Isaac v.
Mount Sinai Hospital, 3 Conn. App. 598, 602, 490 A.2d
1024, cert. denied, 196 Conn. 807, 494 A.2d 904 (1985).
Other jurisdictions have also held the statutory time
limitation contained within their respective wrongful
death statutes to be a precondition of the right to bring
a wrongful death action that may not be waived. See
Knauer v. Johns-Manville Corporation, 638 F. Sup.
1369, 1375–76 (D. Md. 1986); Theberge v. Transporta-
tion Systems, 611 F. Sup. 368, 371 (D.N.H. 1984); Price
v. Litton Systems, Inc., 607 F. Sup. 30, 32 (S.D. Miss.
1984); Phillips v. Elrod, 135 Ill. App. 3d 70, 74, 478
N.E.2d 1078 (1985); Martin v. Rinck, 491 N.E.2d 556,
559 (Ind. App. 1986); Honda Motor Co., Ltd. v. Parks,
485 N.E.2d 644, 646 (Ind. App. 1985); Sabol v. Pekoc,
148 Ohio St. 545, 554, 76 N.E.2d 84 (1947).

Accordingly, we hold that the three year limitation
contained within § 52-555 is a jurisdictional prerequisite
which cannot be waived and which must be met in order
to maintain an action under § 52-555. Since § 52-555
creates liability where none formerly existed, the stat-
ute must be strictly construed and we are not at lib-
erty to extend, modify or enlarge its scope through the
mechanics of construction. See Ahern v. New Haven,
190 Conn. 77, 82, 459 A.2d 118 (1983); Edmundson v.
Rivera, 169 Conn. 630, 633, 363 A.2d 1031 (1975).

### III

In light of our holding above, we now address the
issue of the applicability of article first, § 10, of the Con-

necticut constitution which was properly raised by the plaintiff, by way of a preliminary counter statement of issues filed on April 24, 1986, in accordance with Practice Book § 4013 (a) (1). The plaintiff argues that because the three year repose portion of "General Statutes § 52-555 abolishes those causes of action for negligence resulting in death which accrue more than three years after the act or omission complained of," it denies her access to the courts of this state and thus violates article first, § 10. We disagree.

The constitution of Connecticut, article first, § 10, provides: "All courts shall be open, and every person for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Article first, § 10, has been viewed as a limitation upon the legislature's ability to abolish common law and statutory rights that existed in 1818, when article first, § 10, was adopted, and which were "incorporated in that provision by virtue of being established by law as rights the breach of which precipitates a recognized injury . . . ." *Gentile* v. *Altermatt,* 169 Conn. 267, 286, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); see also *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 585, 512 A.2d 893 (1986); *Warner* v. *Leslie-Elliott Constructors, Inc.,* 194 Conn. 129, 133 n.3, 479 A.2d 231 (1984). Therefore, where a right existed at common law or by statute in 1818 and became incorporated into the Connecticut constitution by the adoption of article first, § 10, the legislature may restrict or abolish such incorporated right only where it provides a reasonable alternative to the enforcement of such right. See *Daily* v. *New Britain Machine Co.,* supra; *Gentile* v. *Altermatt,* supra, citing *Kluger* v. *White,* 281 So. 2d 1, 4-5 (Fla. 1973); 16A C.J.S. 509-10, Constitutional Law § 710; V. Reuben & V. Williams, "The Constitu-

tionality of Basic Protection," 1 Conn. L. Rev. 44, 46 n.13 (1968); see also *Overland Construction Co.* v. *Sirmons,* 369 So. 2d 572, 573 (Fla. 1979); *Saylor* v. *Hall,* 497 S.W.2d 218, 221–24 (Ky. 1973).

The plaintiff's article first, § 10 argument is based upon the premise that an action for wrongful death existed in 1818, and thus cannot be legislatively restricted or abolished without a reasonable alternative remedy being provided. We have already held above that an action for damages for wrongful death did not exist at common law or by statute in Connecticut in 1818. The Connecticut legislature first adopted a wrongful death statute in 1851 that was limited to deaths caused by railroad companies. See Public Acts 1851, c. 43, § 2. It was not until 1877, that the Connecticut legislature allowed an action for wrongful death against anyone "legally at fault for such injuries." See Public Acts 1877, c. 78. Thereafter, through a series of amendments and recodifications, including Public Acts 1957, No. 532, which added the three year repose period, and Public Acts 1969, No. 401, which extended the one year period of limitation to two years from the date when the injury is first sustained or discovered, Connecticut's wrongful death statute has evolved to its present state under § 52-555. Therefore, § 52-555 creates a remedy where none previously existed, and the addition of the three year repose period does no more than redefine the time within which that remedy may be sought.

The plaintiff cites in support of her argument five decisions of other state courts that have held that statutes of limitation that begin to run before the occurrence of any injury are violative of similar "access to courts" provisions. Those cases were cited by Chief Justice Speziale in his concurring opinion in *McDonald* v. *Haynes Medical Laboratory, Inc.,* 192 Conn. 327, 335,

471 A.2d 646 (1984). Upon a careful review of those cases, we do not find them controlling. In fact, four of those cases support this court's conclusion. In each of those cases, the court declared the repose period contained within the respective state statute violative of the state's "access to courts" provision. This was done only upon an initial finding by each court that the causes of action set forth in the statute containing the repose period, either (1) existed at common law and prior to the adoption of the state's "access to courts" provision, or (2) were recognized as valid causes of action under state law prior to the adoption of the repose period. See *Jackson* v. *Mannesmann Demag Corporation,* 435 So. 2d 725 (Ala. 1983); *Lankford* v. *Sullivan, Long & Hagerty,* 416 So. 2d 996 (Ala. 1982); *Overland Construction Co.* v. *Sirmons,* supra; *Saylor* v. *Hall,* supra. It must also be noted that none of these four cases or the fifth case of *Diamond* v. *E. R. Squibb & Sons, Inc.,* 397 So. 2d 671 (Fla. 1981), cited by the plaintiff, involved a repose period contained within a wrongful death statute. Thus, we do not find these cases persuasive of the plaintiff's position.[12]

We hold, therefore, that § 52-555 does not violate article first, § 10, because the repose period does not abrogate common law or statutory rights of action that existed in 1818 when that provision of the Connecticut constitution was first adopted.

---

[12] It must also be noted that the plaintiff, under her equal protection analysis, infra, cites in her brief three Connecticut trial court decisions that allegedly have held similar statutes of repose unconstitutional as contrary to article first, § 20, of the Connecticut constitution. One of these cases, however, *McDonald* v. *Haynes Medical Laboratory, Inc.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 19805 (February 14, 1985), also held that General Statutes § 52-555 did not violate article first, § 10, because an action for wrongful death did not exist at common law. The plaintiff failed to address this case under her article first, § 10 analysis.

## IV

The plaintiff further argues that § 52-555 violates the equal protection clause of article first, § 20, of the Connecticut constitution by establishing various classifications without a rational basis. The classes identified are (1) persons killed fewer than three years after the act or omission complained of, and (2) persons killed more than three years after the act or omission complained of.

We begin by noting that " '[t]he equal protection provisions of the federal and state constitutions have the same meaning and limitations.' " *Daily* v. *New Britain Machine Co.,* supra, 577; see also *Keogh* v. *Bridgeport,* 187 Conn. 53, 66, 444 A.2d 225 (1982); *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 314, 417 A.2d 343 (1979); *Miller* v. *Heffernan,* 173 Conn. 506, 516–17, 378 A.2d 572 (1977), appeal dismissed, 434 U.S. 1057, 98 S. Ct. 1226, 55 L. Ed. 2d 758 (1978). One who challenges the constitutionality of a statute bears the heavy burden of overcoming the presumption of its constitutional validity and of establishing the statute's invalidity beyond a reasonable doubt. See *State* v. *Thompson,* 197 Conn. 67, 77, 495 A.2d 1054 (1985); *Peck* v. *Jacquemin,* 196 Conn. 53, 64, 491 A.2d 1043 (1985); *Eielson* v. *Parker,* 179 Conn. 552, 557, 427 A.2d 814 (1980); *Engle* v. *Personnel Appeal Board,* 175 Conn. 127, 134, 394 A.2d 731 (1978).

"When a statute is challenged on equal protection grounds . . . the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined." *Ryszkiewicz* v. *New Britain,* 193 Conn 589, 596, 479 A.2d 793 (1984). " 'When a statutory classification impinges upon an inherently suspect class or affects a fundamental personal right, the statute is subject to strict scrutiny and

is justified only by a compelling state interest.' " *State Management Assn. of Connecticut, Inc.* v. *O'Neill,* 204 Conn. 746, 750, 529 A.2d 1276 (1987); *Keogh* v. *Bridgeport,* supra, 66; *Frazier* v. *Manson,* 176 Conn. 638, 645, 410 A.2d 475 (1979); see *Dunn* v. *Blumstein,* 405 U.S. 330, 335–42, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972). Otherwise, a statute will stand if the classification bears a reasonable relation to a legitimate state interest. *State Management Assn. of Connecticut, Inc.* v. *O'Neill,* supra; *Ryszkiewicz* v. *New Britain,* supra, 597; *Keogh* v. *Bridgeport,* supra; see, e.g., *G. D. Searle & Co.* v. *Cohn,* 455 U.S. 404, 408, 102 S. Ct. 1137, 71 L. Ed. 2d 250 (1982); *Eielson* v. *Parker,* supra, 563.

"It cannot seriously be argued that a statutory entitlement to sue for wrongful death of another is itself a 'fundamental' or 'constitutional right.' " *Parham* v. *Hughes,* 441 U.S. 347, 358 n.12, 99 S. Ct. 1742, 60 L. Ed. 2d 269 (1979); see also *Everett* v. *Trunnell,* 105 Idaho 787, 790, 673 P.2d 387 (1983) (applying the rational basis test to an equal protection challenge to the wrongful death statute of Idaho). Nor does the fact that a statute of limitation distinguishes between personal injury claims and wrongful death actions by extending the discovery of injury rule to the former and not the latter, implicate any suspect classes or fundamental rights. Thus the distinction at issue here need only be rationally related to a legitimate government interest to be upheld against an equal protection challenge. See *United States Department of Agriculture* v. *Moreno,* 413 U.S. 528, 534, 93 S. Ct. 2821, 37 L. Ed. 2d 782 (1973); *Ciccarelli* v. *Carey Canadian Mines, Ltd.,* 757 F.2d 548, 555–56 (3d Cir. 1985), citing *Wayne* v. *Tennessee Valley Authority,* 730 F.2d 392, 404 (5th Cir. 1984); *Braswell* v. *Flintkote Mines, Ltd.,* 723 F.2d 527, 531 (7th Cir. 1983); *Cardieux* v. *International Telephone & Telegraph Corporation,* 593 F.2d 142, 144–45

(1st Cir. 1979); *Houk* v. *Furman,* 613 F. Sup. 1022, 1035–36 (D. Me. 1985).[13]

The equal protection clauses of the United States and Connecticut constitutions do not deny to the states the power to treat different classes of persons in different ways. *McDonald* v. *Board of Election Commissioners,* 394 U.S. 802, 808–809, 88 S. Ct. 1404, 22 L. Ed. 2d 739 (1969); *Daily* v. *New Britain Machine Co.,* supra, 577; *Gentile* v. *Altermatt,* supra, 295. The equal protection clause does deny the state the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the object of the statute. A classification " 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation . . . .' " *Daily* v. *New Britain Machine Co.,* supra, 578; *Gentile* v. *Altermatt,* supra, 295–96, citing *Reed* v. *Reed,* 404 U.S. 71, 75–76, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971).

The enactment of "[s]tatutes limiting the time within which an action may be brought are the result of a legitimate legislative determination which balances the rights and duties of competing groups." *Barwick* v. *Celotex Corporation,* 736 F.2d 946, 956 (4th Cir. 1984).

---

[13] The application of the rational basis test is further warranted based upon the fact that the alleged classifications and disparate treatment asserted here result from the inherent nature of the statute of repose. In a recent equal protection challenge to the repose period contained in General Statutes § 52-577a (a), we stated: "The relevant inquiry is whether the classification and disparate treatment inherent in the statute of repose legislation bears a rational relationship to a legitimate state end and is based on reasons related to the accomplishment of that goal. *McDonald* v. *Board of Election Commissioners,* 394 U.S. 802, 808–809, 89 S. Ct. 1404, 22 L. Ed. 2d 739 (1969); *Gentile* v. *Altermatt,* 169 Conn. 267, 295, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976)." *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 577, 512 A.2d 893 (1986); see also *Schafer* v. *Aspen Skiing Corporation,* 742 F.2d 580, 583 (10th Cir. 1984).

A statute of limitation or of repose is designed to (1) prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise. See *United States v. Kubrick,* 444 U.S. 111, 117, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979); *United States v. Marion,* 404 U.S. 307, 322 n.14, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971); *State v. Coleman,* 202 Conn. 86, 91–92, 519 A.2d 1201 (1987); *Daily v. New Britain Machine Co.,* supra, 582–83; *Vilcinskas v. Sears, Roebuck & Co.,* 144 Conn. 170, 174–75, 127 A.2d 814 (1956); *Lametta v. Connecticut Light & Power Co.,* 139 Conn. 218, 221, 92 A.2d 731 (1952); *Anderson v. Bridgeport,* 134 Conn. 260, 266–67, 56 A.2d 650 (1947). Repose periods that have made a distinction between wrongful death actions and personal injury actions have also been held to be rationally related to the additional state interest of promoting the prompt settlement of the economic and legal affairs of the deceased. *Ciccarelli v. Carey Canadian Mines, Ltd.,* supra, 556; *Cardieux v. International Telephone & Telegraph Corporation,* supra, 145. Clearly, the three year period in question is rationally related to the accomplishment of all the legitimate state interests set forth above.

We cannot conclude that § 52-555 is unconstitutional under article first, § 20, merely because the three year period it contains is unfair at times.[14] Statutes

---

[14] The plaintiff cites a number of cases from other jurisdictions which have held statutes of repose unconstitutional on equal protection grounds. Since none of the cases cited decided the constitutionality of a statute of repose contained in a wrongful death statute, we do not find any of these

of limitation find their justification in necessity and convenience rather than logic. *Chase Securities Corporation* v. *Donaldson,* 325 U.S. 304, 314, 65 S. Ct. 1137, 89 L. Ed. 1628, reh. denied, 325 U.S. 896, 65 S. Ct. 1561, 89 L. Ed. 2006 (1945). There is no reason, constitutional or otherwise, which prevents the legislature from establishing a three year time period that runs from the date of the act or omission complained of, as was done here, even though at that date no person had sustained damage and therefore no cause of action had come into existence. See *McDonald* v. *Haynes Medical Laboratory, Inc.,* supra, 330; *Daily* v. *New Britain Machine Co.,* supra, 582; *Prokolkin* v. *General Motors Corporation,* 170 Conn. 289, 297, 365 A.2d 1180 (1976); *Vilcinskas* v. *Sears, Roebuck & Co.,* supra, 174. It is not the function of the court to alter a legislative policy merely because it produces unfair results. *McDonald* v. *Haynes Medical Laboratory, Inc.,* supra, 334; *Penfield* v. *Jarvis,* 175 Conn. 463, 474–75, 399 A.2d 1280 (1978); 16A C.J.S. 109, Constitutional Law § 271. Individual rights and remedies must at times and of necessity give way to the interests and needs of society. *Gentile* v. *Altermatt,* supra, 308.

The plaintiff further argues that the three year repose period in question, when compared to the periods of limitation for death actions under General Statutes § 52-577a[15] (ten years or longer for product liability

cases germane. In fact, all of the cases involved state statutes that shielded certain groups of individuals involved with the design and construction of improvements upon realty after a period of time from the completion of the project. The statutes were held to violate equal protection clauses of the state and federal constitutions, *not* because of the periods of limitation contained therein, but rather, on the ground that the statutes did not equally apply the shield to groups similarly situated such as the realty owners, occupiers or possessors.

[15] "[General Statutes] Sec. 52-577a. LIMITATION OF ACTION BASED ON PRODUCT LIABILITY CLAIM. (a) No product liability claim as defined in section 52-572m shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered except that,

claims), § 52-584a[16] (seven years for action against an architect or professional engineer), §§ 52-577b and

subject to subsections (c) and (d), no such action may be brought against any party nor may any party be impleaded pursuant to subsection (b) later than ten years from the date that the party last parted with possession or control of the product.

"(b) In any such action a product seller may implead any third party who is or may be liable for all or part of the plaintiff's claim, if such third party defendant is served with the third party complaint within one year from the date the cause of action brought under subsection (a) of this section is returned to court.

"(c) The ten-year limitation provided for in subsection (a) shall not apply to any product liability claim brought by a claimant who is not entitled to compensation under chapter 568, provided the claimant can prove that the harm occurred during the useful safe life of the product. In determining whether a product's useful safe life has expired, the trier of fact may consider among other factors: (1) The effect on the product of wear and tear or deterioration from natural causes; (2) the effect of climatic and other local conditions in which the product was used; (3) the policy of the user and similar users as to repairs, renewals and replacements; (4) representations, instructions and warnings made by the product seller about the useful safe life of the product; and (5) any modification or alteration of the product by a user or third party.

"(d) The ten-year limitation provided for in subsection (a) shall be extended pursuant to the terms of any express written warranty that the product can be used for a period longer than ten years, and shall not preclude any action against a product seller who intentionally misrepresents a product or fraudulently conceals information about it, provided the misrepresentation or fraudulent concealment was the proximate cause of harm of the claimant.

"(e) The definitions contained in section 52-572m shall apply to this section.

"(f) The provisions of this section shall apply to all product liability claims brought on or after October 1, 1979."

[16] [General Statutes] Sec. 52-584a. ACTIONS AGAINST ARCHITECT OR PROFESSIONAL ENGINEER. No action or arbitration, whether in contract, in tort, or otherwise, (1) to recover damages (A) for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of an improvement to real property; (B) for injury to property, real or personal, arising out of any such deficiency; (C) for injury to the person or for wrongful death arising out of any such deficiency, or (2) for contribution or indemnity which is brought as a result of any such claim for damages shall be brought against any architect or professional engineer performing or furnishing the design, planning, supervision or observation of construction or construction of such improvement more than seven years after substantial completion of such improvement.

"(b) Notwithstanding the provisions of subsection (a) of this section, in

## 52-577c[17] (unlimited period of time for agent orange and hazardous chemical claims provided the discovery

the case of such an injury to property or the person or such an injury causing wrongful death, which injury occurred during the seventh year after such substantial completion, an action in tort to recover damages for such an injury or wrongful death may be brought within one year after the date on which such injury occurred, irrespective of the date of death, but in no event may such an action be brought more than eight years after the substantial completion of construction of such an improvement.

"(c) For purposes of subsections (a) and (b) of this section, an improvement to real property shall be considered substantially complete when (1) it is first used by the owner or tenant therof or (2) it is first available for use after having been completed in accordance with the contract or agreement covering the improvement, including any agreed changes to the contract or agreement, whichever occurs first.

"(d) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring action."

[17] "[General Statutes] Sec. 52-577b. LIMITATION OF ACTION FOR DAMAGES CAUSED BY CONTACT WITH OR EXPOSURE TO PHENOXY HERBICIDES. Notwithstanding the provisions of sections 52-577 and 52-577a, an action to recover damages for personal injury caused by contact with or exposure to phenoxy herbicides while serving as a member of the armed forces of the United States in Indo-China from January 1, 1962, through March 29, 1973, may be commenced within two years from the date of discovery of such injury, or within two years from the date when, through the exercise of reasonable diligence, the cause of such injury should have been discovered, whichever is later."

"[General Statutes] Sec. 52-577c. LIMITATION OF ACTION FOR DAMAGES CAUSED BY EXPOSURE TO A HAZARDOUS CHEMICAL SUBSTANCE OR MIXTURE OR HAZARDOUS POLLUTANT. (a) For the purposes of this section: (1) 'Environmental' means any surface water, ground water, drinking water supply, land surface or subsurface strata or ambient air within the state or under the jurisdiction of the state; (2) 'exposure' means any contact, ingestion, inhalation or assimilation, including irradiation; (3) 'hazardous chemical substance or mixture' means any chemical substance or mixture for which there is a federal standard, including any law, requirement, tolerance, prohibition, action level or similar legal authority adopted by an agency pursuant to federal law, including any such standard or legal authority adopted by a state or local government pursuant to federal law, generally intended to prevent, reduce or mitigate the risk of a disease or class or type of diseases to an individual or individuals resulting from exposure to such chemical substance or mixture; (4) 'hazardous pollutant' means any designated, specified or referenced chemical considered to be a 'hazardous substance'

requirements are met), § 52-576[18] (six years on a contract action), and § 42a-2-725[19] (four years on a breach of warranty action), is unconstitutional because it creates an additional, more restrictive class of wrongful death actions without a "fair, reasonable, or rational reason." We disagree.

under Section 101 (14) of the Comprehensive Environmental Response, Compensation, and Liabilty Act, 42 U.S.C. 9601 (14); (5) 'release' means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment.

"(b) Notwithstanding the provisions of sections 52-577 and 52-577a, no action to recover damages for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment shall be brought but within two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered.

"(c) The provisions of subsection (b) of this section shall not apply to an action brought against (1) any municipal waterworks system established and operated under chapter 102 or any special act, (2) any regional water authority established under any general statute or special act, or (3) any water company as defined in section 16-1."

[18] "[General Statutes] Sec. 52-576. ACTIONS FOR ACCOUNT OR ON SIMPLE OR IMPLIED CONTRACTS. (a) No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section.

"(b) Any person legally incapable of bringing any such action at the accruing of the right of action may sue at any time within three years after becoming legally capable of bringing the action.

"(c) The provisions of this section shall not apply to actions upon judgments of any court of the United States or of any court of any state within the United States, or to any cause of action governed by article 2 of title 42a."

[19] "[General Statutes] Sec. 42a-2-725. STATUTE OF LIMITATIONS IN CONTRACTS FOR SALE. (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

It must first be noted that the plaintiff has cited no authority from any jurisdiction wherein a wrongful death statute has been declared unconstitutional, as violative of the equal protection clause of either the state or the federal constitution, for any reason. Upon reviewing the statutes cited by the plaintiff, this court finds obvious differences that would justify the different treatment afforded by the legislature. We cannot say, for instance, that the inherent nature of the instrumentalities (agent orange, hazardous chemicals, deficient architectural and engineering designs) that are recognized by these statutes as the cause of the death, is an insufficient, unfair or irrational reason for warranting a different repose or period applicable to each. Additionally, this court does not read General Statutes §§ 52-576 and 42a-2-725 as providing longer periods of time within which a wrongful death action resulting from a breach of contract or of a warranty may be maintained. The language of § 52-555 does not specifically restrict its application to deaths resulting merely from the negligence of another.

This court concludes that the plaintiff has failed to demonstrate, beyond a reasonable doubt, that General Statutes § 52-555 is in violation of article first, § 20, of the Connecticut constitution.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to render judgment dismissing the action.

In this opinion the other justices concurred.

---

"(3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within six months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

"(4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before October 1, 1961."