[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
AMENDED MEMORANDUM OF DECISION ON THE DEFENDANT COMMISSIONER OF MENTAL RETARDATION'S MOTION TO STRIKE FROM THE JURY DOCKET (NO. 147)[1]
The defendant commissioner of the department of mental retardation seeks to strike this case from the jury docket on the grounds that the plaintiff is not entitled to a jury trial. The plaintiff John F. Canning, administrator of the estate of his son Sean Canning, brought suit pursuant to General Statutes 19a-24
for alleging that his son's death was caused by the negligence of the defendant and his staff. Section 19a-24 authorizes, in pertinent part, suit for claims of damages over $1,500.00 against the commissioner or his staff for their negligence and provides that the state pay for any such damages recovered.[2]
Our state constitution explicitly guarantees that the "right to trial by jury shall remain inviolate." Conn. Const. art. first, 19 (amended art. IV)[3] The right to trial by jury for civil matters has been guaranteed in the colony of Connecticut for over 100 years before the birth of this nation. Surely, it is a fundamental right. Professor Edward L. Stephenson in Conn. Civ. Proc. 174 (2d. ed. 1959) pointed out the following: "Eighteen years before receipt of its charter from Charles II, the colony had established jury trial of all actions claiming in excess of forty shillings, even though the magistrates had discretion to empanel either a jury of six or a jury of twelve. [Code of Conn. (1650), Colonial Records of Conn., 1636-1665 (1850), pp. 509-563] By 1702, the jury had become a jury of twelve in all cases. [Acts and Laws of His Majesties Colony of Conn. in New England (1702)] When the matter in demand exceeded forty shillings, only a jury trial was available. When the matter in demand was less than forty shillings, trial was normally to `the bench' but either party could demand a jury trial, paying `the whole charge of the jury himself.' [Id.] Thus, a jury was optional in the smaller cases and mandatory in the larger ones."
Based upon this rich history of our state constitutional right to trial by jury in civil matters, it would appear to the CT Page 5505 trial court that this fundamental right should be liberally construed in a manner that would afford such a right for issues of fact in a legal action.[4] Block v. Fitts, 259 La. 555, 250 So.2d 738,739 (1971) ("Moreover, a litigant's right to a jury trial is fundamental, and if doubt exists, it should be resolved against loss of the right."); Andres v. Chillow, 273 Ill. App. 251, 253
(1934) ("And it has been held that this provision of the constitution for a jury trial shall be liberally construed in favor of the right."); 50 C.J.S. Juries 10, p. 723. Indeed, in his treatise, Professor Stephenson concluded that "[t]he Connecticut Constitution of 1818 . . . preserved the right of a party to jury trial as to issues of fact in legal actions, but not in actions in equity and not as to minor matters, then defined as actions demanding less than seven dollars." Stephenson, supra. Justice Zephaniah Swift makes this crystal clear when he wrote "[i]t is a rule of common law, that all questions of fact must be tried by the jury and in this State, where the parties join issue upon a matter of fact, it is to be tried by the jury unless the parties shall otherwise agree;. . . ." Swift's Digest of the Laws of Conn., chapter XXII ("Of Trial") p. 737 (1822).
Nevertheless, our Supreme Court has adopted a more restrictive test to determine the constitutional right for trial by jury in a civil case under the state constitution. In Skinner v. Angliker, 211 Conn. 370, 374 (1989) the court restated the historical test that the right to trial by jury for legal claims exists in those cases in which it existed at common law and at the time of the adoption of constitutional provision in 1818 or in those cases substantially similar thereto. In making this determination, the "test is whether the issue raised in the action is substantially of the same nature or is such an issue as prior to 1818 would have been triable to a jury." Swanson v. Boschen,143 Conn. 159, 165 (1959).
The state first argues that since there was no cause of action for wrongful death at common law prior to 1818; Ecker v. West Hartford, 205 Conn. 219, 231 (1987); there is no right to trial by jury in this case. Although this may be dispositive of a claim predicated on the right to access to the courts under article first 10 of the state constitution; Zapata v. Burns,207 Conn. 496, 516 (1988); it is not controlling when determining whether a party has a constitutional right to a jury trial. A less stringent and more flexible test is accorded this fundamental right. The historical test for this right only requires a determination of whether the legal issue for which a trial by jury is sought "has roots in the common law, and if so, whether the remedy involved was one in law or equity." Skinner v. Angliker, supra 376. In other words, the court must determine first whether the underlying cause of action had its origin in the common law prior to 1818 and if so, whether the remedy sought was one in law CT Page 5506 or equity. Swanson v. Boschen, supra 163. The Supreme Court of Connecticut has never implied "that the right to a jury trial does not exist in any cause of action that was not specifically recognized at common law in 1818. `The historical test . . . [applied by the Court] is flexible and may require a jury in a new cause of action, not in existence in [1818], if it involves rights and remedies of the sort traditionally enforced in an action at law or if its nearest historical analogue is an action at common law.' Goar v. Campania Pervana de Vapores, 688 F.2d 417, 427 (5th Cir. 1982)." Skinner v. Angliker, supra 377-78.
The two requirements necessary to invoke the constitutional right to trial by jury are present in this case. First, the remedy which the plaintiff seeks is one of law and not equity. Second, the cause of action has its roots firmly planted in the common law. The underlying cause of action is negligence known in the common law as "trespass on the case" which was recognized before the adoption of the constitutional right to trial by jury in 1818. Swift's Digest, supra chapter X ("Of Trespass On The Case") p. 539 (1822).
Nevertheless, the defendant argues that although this action was brought against the commissioner under 19a-24 it is in essence an action against the state and the state was not "suable" under the common law because of the shield of sovereign immunity. The state's reliance on Skinner's seemingly broad brush is misplaced. Skinner must be viewed in the context of the underlying cause of action at issue in the case. The statute (31-51q)[5], which formed the basis of the cause of action in Skinner, provides for damages against an employer (including a direct action against the state) for the discharge of an employee due to his or her exercise of the constitutional right of free speech which was unknown in the common law.
Section 19a-24, to the extent it allows an action to be brought against the commissioner or his employees for his negligence, merely restates the common law.[6] At common law, prior to 1818, state officers were responsible for their torts. In 1822, Justice Swift wrote: "There are a great variety of officers of an executive or ministerial nature, appointed to discharge certain duties prescribed by law; and the rule applicable to them all is, that when they are guilty of any negligence or misconduct in their offices, or exceed their authority, they are liable to the parties injured, for all the damage they sustain." Swift's Digest, supra 541-42; see, e.g. Swift v. Chamberlain, 3 Conn. 537, 534-44 (1821). "The Anglo American tradition did not include a general theory of immunity from suit or from liability on the part of public officers. It was the boast of Dicey, often quoted, that `[w]ith us every official, from the Prime Minister down to a constable or a CT Page 5507 collector of taxes, is under the same responsibility for every act done without legal justification as any other citizen.'" Harper, James Gray, The Law of Torts, 29.8 (2d ed. 1986), quoting A. Dicey, Law of the Constitution 193 (9th ed. 1939); 81A C.J.S., 126, p. 554; Holdsworth, A. History of English Law, Vol. 18, p. 42 (Little, Brown Co. Boston, 1926); see Farrell v. L. G. DeFelice Son, Inc., 132 Conn. 81, 88 (1945). "An employee or officer of the commonwealth is not a member of a privileged class-exempt from liability for his individual tort. It would be unfortunate, indeed, if one, who has sustained a wrong by an individual, would be remediless and not able to sue him the same as any other citizen because he was an agent, officer, or employee of the commonwealth." Meads v. Rutter, 122 Pa. 64, 184 A. 560,562 (1936). Accordingly, it is certain that employees of the state were suable for damages resulting from their negligent acts under the common law prior to 1818.
Finally the state argues that even if the commissioner could have been sued in tort under the common law, he could not be held vicariously liable for the torts of his employees. Holdsworth, History of English Law, vol. 6, pp. 267-68. This argument must also fail for several reasons. First, the complaint not only charges the employees of the commissioner with negligence, but also the commissioner himself. In determining the right to trial by jury, the court must look to the four corners of the pleadings that is, in this case the complaint. Second, the common law in Connecticut did provide for vicarious liability on the part of an officer of the state. Avery v. Captain Bulky and His Lieutenant, 1 Root's 275, 276 (1791). Third, even if this was a case where the commissioner was solely charged with vicarious liability for which the common law did not extend liability, the plaintiff would still be entitled to a trial by jury because it would merely be one step removed from that which required a jury trial. It is clear that the present action need not mirror the action triable to a jury before 1818. Swanson v. Boschen, supra 165.
It is obvious that the framers of our state constitution of 1818 envisioned at the very least a broad right. This is reinforced by the fact that all civil causes of action (except for matters involving equitable remedies or matters in which the monetary demand was insignificant) were entitled to a trial by jury. A narrow construction would unjustly deprive the plaintiff in this case of his constitutional right to a jury trial which is firmly embedded in our heritage and law. "The right of trial by jury is of ancient origin, characterized by Blackstone as `the glory of the English law' and `the most transcendent privilege which any subject can enjoy' (Bk. 3, p. 379); and, as Justice Story said (2 Story on the Constitution, 1779), `. . . the Constitution would have been justly obnoxious to the most conclusive objection if it had not recognized and confirmed it in the most solemn CT Page 5508 terms.' With, perhaps, some exceptions, trial by jury has always been, and still is, generally regarded as the normal and preferable mode of disposing of issues of fact in civil cases at law as well as in criminal cases. Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Dimick v. Schiedt, 293 U.S. 574, 485-86
(1935). "Since . . . [the jury] is of and from the community, it gives the law an acceptance which verdicts of judges could never do." W. O. Douglas, The Anatomy of Liberty, p. 38 (Simon and Schuster, 1963).
Accordingly, the motion to strike the case from the jury docket is denied.
Robert I. Berdon, Judge.