ROBERT J. KELLY *v.* PETER C. ALBERTSEN
(AC 28932)

DiPentima, Gruendel and Schaller, Js.

Argued January 12—officially released May 26, 2009

*P. Jo Anne Burgh*, for the appellant (plaintiff).

*Robert Dennis Silva*, with whom, on the brief, was *Michael G. Rigg*, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The issue presented in this case is whether the trial court improperly failed to allow the plaintiff, Robert J. Kelly, to conduct discovery prior to ruling on the motion to dismiss filed by the defendant, Peter C. Albertsen, for lack of subject matter jurisdiction.[1] We affirm the judgment of the trial court.

---

[1] As the plaintiff states in his principal brief, and reiterates in his reply brief, the sole issue on appeal is whether the court improperly granted the defendant's motion to dismiss without first affording the plaintiff an opportunity to conduct discovery or holding an evidentiary hearing. We therefore do not consider the propriety of the court's ruling on the motion to dismiss. Similarly, the plaintiff does not challenge, nor do we address, the granting of the motion for a protective order.

For the underlying facts of the plaintiff's appeal we turn to our Supreme Court's opinion in a related case.[2] "In September, 1995, the plaintiff sought medical treatment from [the defendant], a physician employed by the [University of Connecticut Health Center (health center)], complaining of pain and discomfort associated with a history of kidney stone disease and chronic kidney function problems. [The defendant] conducted an evaluation of the plaintiff and advised him that he had kidney stones, recommending that the plaintiff undergo a series of surgical procedures, including a laser lithotripsy, to treat the condition. On October 24, 1995, the plaintiff underwent surgery at the [health center] under the attention of the [health center's] agents and employees, including [the defendant]. The plaintiff was informed that the surgery was successful. Following the surgery, the plaintiff began to notice blood in his urine, which he reported to [the defendant]. As a result of this complaint and after further evaluation by [the defendant] in an effort to detect the cause of the bloody urine, on February 5, 1996, the plaintiff underwent a cystoscopy, a surgical procedure that examines the interior of the bladder. See Stedman's Medical Dictionary (28th Ed. 2006). As a result of that procedure, [the defendant] was able to rule out bladder cancer as the cause of the plaintiff's bloody urine. Between 1996 and 2000, the plaintiff continued to experience episodes of bloody urine and sought further diagnosis by the [health center], although one was never made.

"On May 23, 2000, the plaintiff underwent another cystoscopy, which was performed by [the defendant] at the [health center]. On that same day, [the defendant]

---

[2] In August, 2005, the plaintiff filed a complaint against the University of Connecticut Health Center and the state, alleging medical malpractice and lack of informed consent. *Kelly* v. *University of Connecticut Health Center*, 290 Conn. 245, 247–48 & 247 n.2, 250, 963 A.2d 1 (2009). The trial court granted the state's motion to dismiss for lack of subject matter jurisdiction. Id., 250. Our Supreme Court affirmed the judgment of the trial court. Id., 248.

informed the plaintiff for the first time that he detected some type of 'foreign body' in the plaintiff's left ureter, which [the defendant] initially identified as a plastic sheath. [The defendant] recommended additional surgery to diagnose and treat the condition. In June, 2000, the plaintiff consulted with two additional physicians from a different medical facility for evaluation and treatment of the foreign body. On July 20, 2000, the plaintiff underwent surgery at Hartford Hospital for removal of the plastic sheath, which later was identified as laser fibers. The plaintiff ultimately underwent four additional surgical procedures in order to remove the laser fibers and treat his condition, the last of which occurred on December 14, 2000." *Kelly* v. *University of Connecticut Health Center*, 290 Conn. 245, 248–50, 963 A.2d 1 (2009).

On September 11, 2002, the plaintiff filed an amended two count complaint. In count one, the plaintiff alleged that the defendant, while practicing at the health center, was negligent in his treatment of the plaintiff. In count two, the plaintiff alleged that the defendant committed battery when he operated on the plaintiff without obtaining the plaintiff's informed consent. On April 16, 2003, the defendant filed a motion to dismiss for lack of subject matter jurisdiction. In his motion, the defendant argued that as an employee of the state, he is immune from suit because the plaintiff's action did not allege wilful, wanton, reckless or malicious conduct. The defendant then filed a motion for a protective order to prevent the taking of his deposition in response to the filing of a notice of his deposition on or about July 2, 2003. The plaintiff objected to both motions on August 28, 2003. In his memorandum of law in opposition to the defendant's motion to dismiss, the plaintiff argued that the allegations in his complaint that "[t]he injuries and losses experienced by [the plaintiff], were caused by the carelessness and negligence of [the defendant]"

should be inferred as alleging that the defendant's actions were indeed reckless and that limited discovery was necessary to determine whether the defendant was acting outside the scope of his employment because the issue was essential to the court's subject matter jurisdiction. The plaintiff included a letter from Martyn Vickers, a physician, stating that the defendant's actions "deviated from the standard of care and that this deviation resulted in an adverse outcome and complicated and prolonged [the plaintiff's] clinical course." The court granted the defendant's motion for a protective order on September 2, 2003.[3]

During the arguments on the motion to dismiss on March 5, 2007,[4] the plaintiff indicated his desire to conduct limited discovery or to present evidence at a later date. The court proceeded with the motion, thereby implicitly denying the plaintiff's requests. In a memorandum of decision filed April 27, 2007, the court granted the defendant's motion. Relying on our Supreme Court's decisions in *Martin* v. *Brady*, 261 Conn. 372, 802 A.2d 814 (2002), and *Shay* v. *Rossi*, 253 Conn. 134, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003), the court reasoned that to overcome the statutory immunity of General Statutes § 4-165 for employees of the state who are sued in their individual capacity, the

[3] The defendant filed an additional motion for a protective order on November 26, 2003, in which he asked the court to prevent him from having to respond to the plaintiff's first set of interrogatories and request for production. The plaintiff objected to the defendant's motion. Our review of the record indicates that there was no ruling on the second motion for a protective order. On November 28, 2003, the plaintiff moved for a continuance of the oral argument on the defendant's motion to dismiss, requesting that the motion for a protective order be resolved prior to the hearing on the motion to dismiss, as information sought in the discovery requests would have a direct bearing on the motion to dismiss. There was also no ruling on the motion for a continuance.

[4] Our review of the record reveals no adequate explanation for the four year delay other than the pendency of the plaintiff's other action. See footnote 2.

plaintiff must allege sufficient facts to support a conclusion that the defendant was acting outside of the scope of his employment or was acting wilfully or maliciously. The court concluded that even when the complaint is construed in the light most favorable to the plaintiff, it did not allege acts amounting to the reckless or malicious conduct defined in *Martin* and *Shay*. The plaintiff filed a motion for reargument on May 11, 2007, which the court denied on June 6, 2007. The plaintiff also filed a motion for articulation. The court denied the motion on March 3, 2008. This appeal followed.

We begin with the well established principles that guide our resolution of the plaintiff's claim. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Filippi* v. *Sullivan*, 273 Conn. 1, 8, 866 A.2d 599 (2005). "Claims involving the doctrines of common-law sovereign immunity and statutory immunity, pursuant to § 4-165, implicate the court's subject matter jurisdiction." (Internal quotation marks omitted.) *Mercer* v. *Strange*, 96 Conn. App. 123, 128, 899 A.2d 683 (2006); see Practice Book § 10-31. "[A] subject matter jurisdictional defect may not be waived . . . [or jurisdiction] conferred by the parties, explicitly or implicitly. . . . [O]nce raised, either by a party or by the court itself, the question must be answered before the court may decide the case." (Internal quotation marks omitted.) *Litchman* v. *Beni*, 280 Conn. 25, 30, 905 A.2d 647 (2006).

In deciding a motion to dismiss that challenges the court's jurisdiction, the court must take the facts alleged

in the complaint, including facts necessarily implied from the allegations, and construe them in the light most favorable to the pleader. *Bellman* v. *West Hartford*, 96 Conn. App. 387, 393, 900 A.2d 82 (2006); see *McIntosh* v. *Sullivan*, 274 Conn. 262, 267, 875 A.2d 459 (2005). Moreover, "every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Novak* v. *Levin*, 287 Conn. 71, 79, 951 A.2d 514 (2008).

"As with sovereign immunity, § 4-165 provides state officers and employees with qualified immunity." *Manifold* v. *Ragaglia*, 94 Conn. App. 103, 112, 891 A.2d 106 (2006). General Statutes § 4-165 (a) provides in relevant part that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment. . . ." This type of qualified statutory immunity "involves immunity from suit and is intended to permit courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits." (Internal quotation marks omitted.) *Manifold* v. *Ragaglia*, supra, 112. When, as here, the motion to dismiss raises the issue of statutory immunity under § 4-165, the court must "examine the pleadings to decide if the plaintiff has alleged sufficient facts . . . with respect to personal immunity under § 4-165, to support a conclusion that the defendant[s] [were] acting outside the scope of [their] employment or wilfully or maliciously." (Internal quotation marks omitted.) *Martin* v. *Brady*, supra, 261 Conn. 376.

The plaintiff argues that the court improperly failed to allow him to conduct limited discovery and to hold an evidentiary hearing. We disagree.

Once the defendant raised the issue of subject matter jurisdiction, the court was obliged to address it. "[A]s soon as the jurisdiction of the court to decide an issue is called into question, all other action in the case must come to a halt until such a determination is made." (Internal quotation marks omitted.) *Bellman* v. *West Hartford,* supra, 96 Conn. App. 392; see *Gurliacci* v. *Mayer,* 218 Conn. 531, 545, 590 A.2d 914 (1991) ("[i]t is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court"). Therefore, allowing the plaintiff to conduct discovery prior to ruling on the motion to dismiss would have been inconsistent with the policy that once the issue of subject matter jurisdiction has been raised, it must be decided immediately and before any other action in the case is taken. See *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.,* 239 Conn. 93, 99, 680 A.2d 1321 (1996) ("inappropriate for the trial court to consider [third party plaintiffs'] amended third party complaint, rather than its initial complaint, when acting on the [third party defendant's] motion to dismiss for lack of subject matter jurisdiction"); *Gurliacci* v. *Mayer,* supra, 545 (court should not have allowed plaintiff to amend complaint prior to ruling on motion to dismiss, allowing amendment inconsistent with rule that all other action in case must stop once court's jurisdiction called into question); *Fennelly* v. *Norton,* 103 Conn. App. 125, 136–39, 931 A.2d 269 (inappropriate for court to look beyond pleading and allow plaintiff to add allegations to application at evidentiary hearing when defendant's motion to dismiss premised on insufficiency of application for visitation), cert. denied, 284 Conn. 918, 931 A.2d 936 (2007).

Discovery gathered after a court's denial of a motion to dismiss may, of course, be used to support claims that the court does have subject matter jurisdiction in subsequent motions. See *Manifold* v. *Ragaglia,* supra,

94 Conn. App. 119–22. We know of no authority, however, that requires a court to allow a plaintiff to conduct discovery to meet the burden of alleging facts that clearly demonstrate that the court has subject matter jurisdiction prior to the court's ruling on a motion to dismiss challenging jurisdiction. Indeed, our policy that all other action in a case "comes to a halt" once the issue of subject matter jurisdiction has been raised counsels against the allowance of discovery prior to the court's determination of the jurisdictional issue.[5]

The plaintiff further argues that because there were "issues of fact" regarding the court's jurisdiction, the court was obligated to conduct an evidentiary hearing. Specifically, the plaintiff states that there were "issues of fact focused on the defendant's state of mind" during the surgical procedure performed on the plaintiff and relies on the proposition that "[w]hen issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Internal quotation marks omitted.) *Bellman* v. *West Hartford*, supra, 96 Conn. App. 396. The facts of this case, however, render that proposition inapplicable.

As our Supreme Court has explained, "in the absence of any disputed issues of fact pertaining to jurisdiction, there [is] no need to hold an evidentiary hearing before deciding the motion to dismiss." *Amore* v. *Frankel*, 228 Conn. 358, 369, 636 A.2d 786 (1994); see also *Coughlin* v. *Waterbury*, 61 Conn. App. 310, 315, 763 A.2d 1058 (2001) (due process requires evidentiary hearing prior

---

[5] Our decision does not, as the plaintiff appears to suggest, foreclose a plaintiff's ability to sustain his burden of alleging facts demonstrating the court's jurisdiction over the action. We note that the plaintiff could have filed a bill of discovery; see *H & L Chevrolet, Inc.* v. *Berkley Ins. Co.*, 110 Conn. App. 428, 433–34, 955 A.2d 565 (2008); which would have allowed him to discover facts relevant to his jurisdictional burden.

to adjudication of jurisdictional challenge when issues of fact disputed); *Bradley's Appeal from Probate*, 19 Conn. App. 456, 467, 563 A.2d 1358 (1989) (same). Although "we indulge every presumption in favor of subject matter jurisdiction"; *ABB Automation, Inc.* v. *Zaharna*, 77 Conn. App. 260, 267, 823 A.2d 340 (2003); the allegations here did not contain a factual dispute regarding jurisdiction that necessitated an evidentiary hearing. The defendant's motion to dismiss did not challenge the factual allegations in the plaintiff's complaint. Rather, the defendant asserted that he was "immune from suit, as the [p]laintiff's action fail[ed] to allege wilful, wanton, reckless or malicious acts . . . ." On appeal, the plaintiff does not challenge the court's finding that his complaint did not allege that the defendant acted in a wilful, wanton or reckless manner, nor does the plaintiff claim that his complaint alleged "issues of fact" regarding the defendant's state of mind. Accordingly, the court properly ruled on the motion to dismiss without holding an evidentiary hearing or allowing the plaintiff to conduct discovery.

The judgment is affirmed.

In this opinion the other judges concurred.