PALMER, J.
**254 The plaintiffs in this wrongful death action, Susan Angersola and Kathleen Thurz, coexecutors of the estate of the decedent, Patricia Sienkiewicz, appeal from the judgment of the trial court, which granted the motions to dismiss filed by the defendants, Radiologic Associates of Middletown, P.C. (Radiologic Associates), Robert Wolek, Middlesex Hospital, **255 Shoreline Surgical Associates, P.C. (Shoreline), and Eileen Tobin, on the ground that the plaintiffs failed to commence their action within the five year repose period of General Statutes § 52-555,[1] this state's wrongful death statute.[2] The plaintiffs first claim that the trial court incorrectly concluded that compliance with that repose provision is a prerequisite to the court's jurisdiction over the action. They further claim that the trial court improperly resolved disputed jurisdictional facts without affording them an opportunity either to engage in limited discovery or to present evidence in connection with their contention that the repose period had been tolled by the continuing course of conduct doctrine or the continuing course of treatment doctrine.[3] Although *525 **256 we reject the plaintiffs' jurisdictional claim, we agree with their second claim insofar as the continuing course of conduct doctrine is concerned. Accordingly, we reverse the trial court's judgment.[4]
The following facts and procedural history are relevant to our resolution of the plaintiffs' claims. On November 1, 2007, the decedent was admitted to Middlesex Hospital by her surgeon, Jonathan Blancaflor, an employee of Shoreline, for laparoscopic gastrointestinal surgery. On November 5, 2007, while the decedent was recovering from that surgery, Eileen Tobin, a physician's assistant also employed by Shoreline, ordered an X-ray of the decedent's chest. Robert Wolek, a radiologist employed by Radiologic Associates, which provides radiological services for Middlesex Hospital, interpreted the X-ray and dictated a report of his findings. The report was transcribed at 4:29 p.m. on November 5, 2007, and edited, approved, and electronically signed by Wolek at 10:52 p.m. that same day. In addition to reporting the presence of pulmonary opacities indicative of "congestive heart failure," Wolek also reported the presence of a separate "1.8 [centimeter] spiculated density in the left upper lung," indicative of lung cancer. Wolek recommended that the mass be investigated further by "[c]orrelation with older studies," if available, and by a computerized tomography (CT) scan. Wolek's **257 report indicates that his findings were "called to the [hospital] floor at the time of the reading." A nurse's note in the decedent's hospital file indicates that the decedent's X-ray results were received at approximately 2:30 p.m. on November 5, 2007, and communicated to Tobin at that time.
On November 12, 2007, Tobin dictated a discharge summary for the decedent's medical file, in which she specifically referenced Wolek's findings regarding the decedent's congestive heart failure but not his diagnosis of a spiculated density in her left lung. Approximately four and one-half years later, on April 6, 2012, a CT scan of the decedent's lungs revealed a large neoplasm in the upper left lobe measuring 5.4 by 4 by 6.6 centimeters. The decedent died from stage IV lung cancer approximately two years later, on June 8, 2014.
On July 7, 2014, the plaintiffs commenced this action, alleging that the decedent's death was the direct result of the defendants' failure, or the failure of their agents or employees, to exercise reasonable care in a number of respects, including but not limited to their continuing failure to notify the decedent about the suspicious mass in her left lung even though they all were aware of the condition. Shortly thereafter, the defendants filed motions to dismiss for lack of subject matter jurisdiction, in which they argued that, because a wrongful death action is a statutorily *526 created right of action that did not exist at common law, the plaintiffs' failure to commence the action within the five year statutory repose period deprived the court of subject matter jurisdiction over the plaintiffs' claims. See, e.g., Karp v. Urban Redevelopment Commission , 162 Conn. 525, 529, 294 A.2d 633 (1972) ("the general rule [is] that a time limitation on the enforcement of a right, created by statute and not existing at common law, is a part of the right and must be met in order to provide a court with jurisdiction to hear the cause of action"). Tobin **258 also filed an affidavit in which she stated that she provided no care for the decedent after November 5, 2007, never received a telephone call or any other form of communication from Wolek regarding the results of the decedent's November 5, 2007 X-ray, never was informed by anyone that Wolek had diagnosed a mass in the decedent's lung, and never saw or was provided a copy of Wolek's X-ray report.
In response, the plaintiffs filed a motion for limited discovery in which they asserted, inter alia, that the repose period had been tolled as to all of the defendants in accordance with the continuing course of conduct and continuing course of treatment doctrines. They further asserted that, under Conboy v. State , 292 Conn. 642, 974 A.2d 669 (2009), when a determination of subject matter jurisdiction turns on disputed issues of fact, the case cannot properly be decided on a motion to dismiss unless the plaintiff is afforded an opportunity to establish such facts either via discovery or an evidentiary hearing. Id., at 652, 974 A.2d 669 ; see also id. ("[when] a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts"). The plaintiffs also outlined the discovery that they believed was necessary for them to establish the court's jurisdiction through the application of tolling doctrines. Specifically, the plaintiffs sought to discover, among other things, the name of the person from Wolek's office, if it was not Wolek himself, who called the hospital floor to report the decedent's X-ray results, the name of the person who took that call, and the information that was imparted to him or her during the call. The plaintiffs also sought discovery related to Wolek's and Radiologic Associates' general practices for communicating X-ray results and whether the decedent's X-ray results were ever transferred to the decedent's hospital chart, to **259 Tobin, or to any of the decedent's other health-care providers. Following argument on the plaintiffs' motion for limited discovery, the trial court, Domnarski , J. , denied the motion, explaining that Kelly v. Albertsen , 114 Conn. App. 600, 608, 970 A.2d 787 (2009), barred such discovery prior to a ruling on the defendants' motions to dismiss.[5] *527 Thereafter, the plaintiffs filed a brief in opposition to the defendants' motions to dismiss, claiming that compliance with the five year repose provision of § 52-555 is not a jurisdictional prerequisite and that, even if it were, the allegations set forth in their complaint, when viewed in the light most favorable to the plaintiffs, were sufficient for jurisdictional purposes. The plaintiffs also argued that, "[t]o the extent the court in making this jurisdictional determination considers anything other than the factual allegations contained in the plaintiffs' complaint, the plaintiff[s] [request] an evidentiary hearing to address any critical disputed issues of fact.... At present, the only 'evidentiary' information submitted by the defendants is the self-serving affidavit of [Tobin], which should be discounted in its entirety."
Subsequently, the trial court, Aurigemma , J. , heard argument on this issue. At that time, Tobin, Shoreline **260 and Middlesex Hospital all argued that the continuing course of conduct doctrine was inapplicable to them because, among other reasons, none of them was aware, prior to the expiration of the repose period, that Wolek had diagnosed a mass in the decedent's left lung. See Grey v. Stamford Health System, Inc. , 282 Conn. at 745, 756, 924 A.2d 831 (2007) (for continuing course of conduct doctrine to apply, plaintiff must prove that defendant had actual knowledge of plaintiff's need for ongoing treatment or monitoring). For their part, Wolek and Radiologic Associates claimed that Wolek had fulfilled his duty to the decedent by correctly diagnosing the mass and reporting his diagnosis to the hospital floor. Finally, all of the defendants asserted that the continuing course of treatment doctrine was inapplicable because none of them had provided the decedent with ongoing treatment for any identified condition following her discharge from the hospital. See id., at 754, 924 A.2d 831 (to establish continuous course of treatment, plaintiff is required to prove, among other things, that she had an identified medical condition requiring ongoing treatment or monitoring and that defendants provided such treatment or monitoring).
In response, the plaintiffs reiterated their claims that the motions to dismiss must be denied because the limitation period of § 52-555 does not implicate the court's subject matter jurisdiction and that, even if it does, the allegations of the complaint raised a genuine issue of material fact as to whether the defendants knew about the mass in the decedent's lung prior to the expiration of the statutory repose period. Specifically, the plaintiffs' counsel argued: "Factually, this case poses a very interesting scenario. We have, in this case, a chest X-ray that was taken on November 5, 2007. It was interpreted by ... Wolek .... In his radiology report, [he] indicate[d] that he [found], in addition to findings consistent with congestive heart failure...
**261 a 1.8 centimeter spiculated mass ... suggestive of cancer in the left lung.... [I]n their brief, [Wolek and Radiologic Associates] say not only did [Wolek] identify it but [that] he circled it on the film ... so that other health-care providers, looking at the film, would be able to clearly see what was ... there. In their [brief], they [also] say [that Wolek] was so ... concerned about [the mass] that he wanted to pass [the information] on ... to the [physician's assistant] who [had] ordered the film, and the way he did that was he called down to the [hospital] floor, [and] apparently spoke to a nurse because *528 there's a record [of their conversation] in the chart. I can't tell you who the nurse was [because] I can't read her signature, but that [call occurred at] about 2:30 ... that afternoon. And the nurse, in the [chart], indicates [that she] passed [the information] on ... to ... Tobin. So, [we have] actual knowledge of Wolek, actual knowledge of [the] agent, servant, or employee of the hospital, and actual knowledge of Tobin.... Now, in her self-serving affidavit ... Tobin says, 'nobody told me anything. I didn't know.' ... [As] Wolek ... points out, [however], she had to know because, in the discharge summary ... she indicates ... [that the] X-ray [revealed] ... evidence of congestive heart failure. So, clearly, she was aware of at least some of the findings on the chest X-ray. This is all fodder for the jury. [It] is ... for the jury to decide who knew what and when."
After argument, the trial court granted the defendants' motions to dismiss. As a threshold matter, the court, relying primarily on Ecker v. West Hartford , 205 Conn. 219, 231-32, 530 A.2d 1056 (1987), concluded that compliance with the repose provision of § 52-555 is a jurisdictional prerequisite to suit and rejected the plaintiffs' contention to the contrary. The court also agreed with the defendants that the record did not support application of either the continuing course of conduct doctrine or the continuing course of treatment doctrine.
**262 With respect to its ruling on the continuing course of treatment doctrine, the court reasoned that the plaintiffs had failed to prove or allege facts sufficient to demonstrate that the defendants had treated or monitored the decedent for any condition following her discharge from the hospital. In addition, the court concluded that the continuing course of conduct doctrine was inapplicable to Wolek and Radiologic Associates because the plaintiffs' claims against them were predicated on Wolek's alleged failure to accurately report his findings to Tobin and Blancaflor. The court further asserted that it was "undisputed" that Wolek did report his findings to someone on the hospital floor, who, in turn, reported them to Tobin. The court also explained that "[t]he undisputed fact that ... Wolek reported the findings of his diagnosis to the decedent's treating health-care providers release[s] him [from] any continuing obligation to the decedent."
With respect to Tobin and Shoreline, the court determined that the continuing course of conduct doctrine was inapplicable to them because, in her affidavit, Tobin stated that she was not aware, prior to the commencement of the plaintiffs' action, that the X-ray she had ordered for the decedent on November 5, 2007, had revealed a mass in the decedent's left lung. The trial court observed that, although the plaintiffs "mention[ed] in their memorandum in opposition to the motions to dismiss that they intend[ed] to demand an evidentiary hearing," "they failed to present any evidence at the hearing at which the motions were argued [to rebut Tobin's claims]. The affidavits and records they have presented in opposition to the motion[s] to dismiss do not contain any evidence that Tobin knew about the abnormality in the chest X-ray."
Finally, the trial court concluded that the continuing course of conduct doctrine did not apply to Middlesex Hospital because the plaintiffs' claims against the **263 hospital were derivative of their claims against Wolek and Radiologic Associates, which the court had dismissed, and, because, in the court's view, "[i]t would be virtually impossible for any hospital to be free from protracted and unknown liability if at any time a former patient with whom the hospital has no ongoing relationship could extend the limitations period by virtue *529 of a claim that the hospital failed to send a patient's [X-ray] report" to the patient's physicians. After the court granted the motions to dismiss, the plaintiffs filed a timely motion to reargue, which the court denied.
On appeal, the plaintiffs claim that the trial court (1) incorrectly concluded that the repose period of § 52-555 is subject matter jurisdictional, (2) improperly denied their motion for limited discovery, (3) improperly failed to construe the complaint in the light most favorable to them, (4) misidentified disputed facts as undisputed, and (5) improperly resolved disputed jurisdictional facts without conducting an evidentiary hearing, as required by Conboy v. State , supra, 292 Conn. at 652, 974 A.2d 669. The plaintiffs further contend that, in dismissing their claims against Middlesex Hospital, the trial court addressed only those claims that were derivative of their claims against Wolek and Radiologic Associates and failed to address the plaintiffs' direct liability claims against the hospital predicated on the hospital nurse's failure to accurately report Wolek's findings to Tobin and Blancaflor.
The defendants maintain that the trial court correctly concluded that the failure to comply with the repose period of § 52-555 deprived the court of subject matter jurisdiction over the present action and that the undisputed facts do not support application of either the continuing course of conduct doctrine or the continuing course of treatment doctrine. Some of the defendants also argue, for the first time on appeal, that the tolling doctrines on which the plaintiffs rely do not apply to **264 § 52-555. Those same defendants also argue that the plaintiffs waived the right to an evidentiary hearing by failing to request one prior to the trial court's ruling on the motions to dismiss.
For the reasons set forth hereinafter, we agree with the defendants that the trial court correctly determined that noncompliance with the repose provision of § 52-555 deprives a trial court of subject matter jurisdiction over the present action. We further conclude that the continuing course of conduct and continuing course of treatment doctrines are properly pleaded in avoidance of that statute. We then reject the defendants' contention that the plaintiffs failed to preserve their claim for an evidentiary hearing. Finally, although we conclude that the trial court correctly determined that the record in the present case does not support application of the continuing course of treatment doctrine, we agree with the plaintiffs that the trial court improperly denied the plaintiffs' request to conduct limited discovery or for an evidentiary hearing to resolve disputed jurisdictional facts related to their claim that the repose period was tolled by the continuing course of conduct doctrine.
We begin our analysis by setting forth the legal principles that govern our review of the plaintiffs' claims. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction.... [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo.... When a ... court decides a ... question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light.... In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader.... The motion to dismiss ... admits all facts [that] are well pleaded, invokes the **265 existing record and must be decided [on] that alone." (Internal quotation marks omitted.) *530 Bennett v. New Milford Hospital, Inc. , 300 Conn. 1, 10-11, 12 A.3d 865 (2011).
"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it.... [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction .... The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal.... In determining whether a court has subject matter jurisdiction, however, we indulge every presumption in favor of jurisdiction." (Citation omitted; internal quotation marks omitted.) Reinke v. Sing , 328 Conn. 376, 382, 179 A.3d 769 (2018).
It is well established that "[a] statute of limitations is generally considered to be procedural, especially [when] the statute contains only a limitation as to time with respect to a right of action and does not itself create the right of action.... [When] the limitation is deemed procedural and personal it is subject to being waived unless it is specifically pleaded because the limitation is considered merely to act as a bar to a remedy otherwise available....
"[When], however, a specific time limitation is contained within a statute that creates a right of action that did not exist at common law, then the remedy exists only during the prescribed period and not thereafter.... In such cases, the time limitation is not to be treated as an ordinary statute of limitation ... but rather is a limitation on the [right] itself, and not of the remedy alone.... The courts of Connecticut have repeatedly held that, under such circumstances, the time limitation is a substantive and jurisdictional **266 prerequisite, which may be raised at any time, even by the court sua sponte, and may not be waived." (Citations omitted; internal quotation marks omitted.) Ecker v. West Hartford , supra, 205 Conn. at 231-32, 530 A.2d 1056. In Ecker , we applied these principles in concluding that, because § 52-555 created liability when none previously existed, the then three year repose period contained therein was "a jurisdictional prerequisite" that could not be waived and that was required to be met in order to maintain an action under the statute. Id., at 233, 530 A.2d 1056.
After the parties in the present case filed their briefs with this court, we issued our decision in Blakely v. Danbury Hospital , 323 Conn. 741, 150 A.3d 1109 (2016), in which we were required to determine whether the lapse of the repose provision in § 52-555 afforded a defendant immunity from suit, such that an interlocutory appeal could be taken from a trial court's determination that an untimely action was saved by the accidental failure of suit statute. See id., at 742-43, 150 A.3d 1109. Following oral argument in Blakely , we directed the parties to file supplemental briefs addressing the following questions: First, "[s]hould this court continue to characterize limitation periods **267 contained within statutorily created rights of action as jurisdictional in nature ... or should this court apply the presumption in favor of subject matter jurisdiction to statutory time limitations for all other actions and determine whether strong evidence of legislative intent exists to overcome that presumption?" (Citation omitted; internal quotation marks omitted.) Id., at 749 n.5, 150 A.3d 1109. Second, "[i]f the court adopts the second approach, is there sufficient evidence of legislative intent to make the limitation period in the wrongful death statute, § 52-555, jurisdictional?" (Citations omitted; internal quotation marks omitted.) Id. *531 Our request for supplemental briefing in Blakely reflects the tension we previously have perceived between our characterization of limitation periods contained within statutorily created rights of action as subject matter jurisdictional and the distinction we repeatedly have drawn "between a trial court's jurisdiction and its authority to act under a particular statute. Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it.... A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it.... Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action." (Citation omitted; internal quotation marks omitted.) Reinke v. Sing , supra, 328 Conn. at 389, 179 A.3d 769 ; see also Amodio v. Amodio , 247 Conn. 724, 730, 724 A.2d 1084 (1999) ("the question of whether a trial court ... properly exercises its statutory authority to act" is "[s]eparate and distinct from the question of whether a court has jurisdictional power to hear and determine a ... matter"). Of course, our trial courts are competent to decide the class of cases-medical negligence actions-to which the plaintiffs' wrongful death action belongs. However, upon reconsideration in Blakely of our prior case law treating the repose period of § 52-555 as jurisdictional, we were persuaded that any concerns we may have had regarding that interpretation must yield to the principle of legislative acquiescence. E.g., Hummel v. Marten Transport, Ltd. , 282 Conn. 477, 494-95, 923 A.2d 657 (2007) (following judicial construction of statute, "[o]nce an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision" [internal quotation marks omitted] ); **268 Hall v. Gilbert & Bennett Mfg. Co. , 241 Conn. 282, 297-98, 695 A.2d 1051 (1997) ("[t]he legislature is presumed to be aware of the interpretation [that] the courts have placed [on] one of its legislative enactments and of the effect that its own nonaction, thereafter, may have" [internal quotation marks omitted] ).
As we explained in Blakely , although § 52-555 has been amended on a number of occasions in the thirty years since Ecker was decided, the legislature has never seen fit to overrule our conclusion that compliance with the repose period is a jurisdictional prerequisite to suit.[6]
*532 See Blakely v. Danbury Hospital , supra, 323 Conn. at 749 n.5, 150 A.3d 1109. In light of its inaction in this regard, we were compelled to conclude in Blakely that the legislature did not disagree with our interpretation of that repose provision. See id. ; see also Berkley v. Gavin , 253 Conn. 761, 777 n.11, 756 A.2d 248 (2000) ("[i]n most of our prior cases, we have employed the doctrine [of legislative acquiescence] not simply because of legislative inaction, but because the legislature affirmatively amended **269 the statute subsequent to a judicial or administrative interpretation ... but chose not to amend the specific provision of the statute at issue"). The plaintiffs in the present case have provided no new or otherwise persuasive reason for us to reconsider that determination.
Accordingly, despite the defendants' failure to raise the issue in the trial court, we must address their contention that the trial court lacked subject matter jurisdiction over the plaintiffs' action because the continuing course of conduct and continuing course of treatment doctrines do not apply to § 52-555. See Blakely v. Danbury Hospital , supra, 323 Conn. at 751, 150 A.3d 1109 ("jurisdictional prerequisites to suit operate as a constraint on the court's ability to entertain the action, requiring dismissal of the action whenever that defect is manifested, even on appeal"). In support of this contention, the defendants cite to Williams v. Commission on Human Rights & Opportunities , 257 Conn. 258, 777 A.2d 645 (2001), which, they argue, stands for the proposition that "the doctrine of equitable tolling does not apply when the statute [of limitations] at issue implicates subject matter jurisdiction." Relying on Williams , the defendants contend that, because the continuing course of conduct and continuing course of treatment doctrines are equitable doctrines, and because the repose provision of § 52-555 implicates the court's subject matter jurisdiction, the plaintiffs cannot invoke the continuing course of conduct and the continuing course of treatment doctrines as a basis for extending that limitation period applicable to any of their claims.
We conclude that the defendants' reliance on Williams is misplaced because, unlike the doctrine of equitable tolling at issue in Williams , which, when applicable, allows an untimely action to proceed; see, e.g., Gager v. Sanger , 95 Conn. App. 632, 638, 897 A.2d 704 ("[t]he doctrine of equitable tolling applies in certain situations to excuse untimeliness in filing a complaint"), **270 cert. denied, 280 Conn. 905, 907 A.2d 90 (2006) ; the continuing course of conduct and continuing course of treatment doctrines are utilized to determine whether an action is timely even though some of the acts or omissions complained of may have occurred outside the limitations period, not to excuse an untimely action.
The continuing course of conduct doctrine delays the accrual of an action by "aggregate[ing] a series of actions by a tortfeasor for purposes of the limitations period, viewing the series of acts as an indivisible whole for that limited purpose. The practical effect is that '[w]hen the wrong [complained of] consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed.' ... Put another way, the continuing course of conduct doctrine redefines the point in time at which the cause of action accrues. See K. Graham, ' The Continuing Violations Doctrine,' 43 Gonz. L. Rev. 271, 279-80 [2007-2008]
*533 (comparing continuing course of conduct doctrine with other exceptions to statute of limitations and noting that continuing course of conduct doctrine takes 'more drastic step of redefining the very claim or claims as to which the limitations period or periods apply')." (Citations omitted.) Watts v. Chittenden , 301 Conn. 575, 602-603, 22 A.3d 1214 (2011) (McLachlan , J. , dissenting). Accordingly, "[w]hen the wrong [complained of] consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed." Handler v. Remington Arms Co. , 144 Conn. 316, 321, 130 A.2d 793 (1957) ; see also Bouchard v. State Employees Retirement Commission , 328 Conn. 345, 374 n.14, 178 A.3d 1023 (2018) ("when there is a continuing course of conduct, the accrual of the cause of action is delayed, and the plaintiff is entitled to recover the full extent of his or her injuries, irrespective of when they commenced"); Watts v. Chittenden , supra, at 592, 22 A.3d 1214 ("[s]ince usually no single incident in a continuous **271 chain of tortious activity can fairly or realistically be identified as the cause of significant harm, it seems proper to regard the cumulative effect of the conduct as actionable" [internal quotation marks omitted] ).
"We [also] have ... recognized ... that the statute of limitations, in the proper circumstances, may be tolled under the continuous [course of] treatment ... doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date.... As a general rule, [t]he [s]tatute of [l]imitations begins to run when the breach of duty occurs. When the injury is complete at the time of the act, the statutory period [starts] to run at that time. When, however, the injurious consequences arise from a course of treatment, the statute does not begin to run until the treatment is terminated.... [As] long as the relation of physician and patient continues as to the particular injury or malady [that the physician] is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased." (Citation omitted; internal quotation marks omitted.) Grey v. Stamford Health System, Inc. , supra, 282 Conn. at 751, 924 A.2d 831.
Thus, under both the continuing course of conduct and continuing course of treatment doctrines, a claim does not arise until the defendant's tortious conduct ceases. In such circumstances, we see no reason why these doctrines should not apply to statutorily created causes of action merely because the applicable limitations period is substantive rather than procedural, and we therefore see no reason why the legislature would disapprove of our application of these doctrines to causes of action it has created by statute. To be sure, "[a] conclusion that a time limit is subject matter jurisdictional has very serious and final consequences. It means that, except in very rare circumstances; e.g., **272 Upjohn Co. v. Zoning Board of Appeals , 224 Conn. 96, 103-104, 616 A.2d 793 (1992) (recognizing limits to notion that subject matter jurisdictional defects may be raised at any time); a subject matter jurisdictional defect may not be waived; State v. Anonymous , 240 Conn. 708, 718, 694 A.2d 766 (1997) ; may be raised at any time, even on appeal; Lewis v. Gaming Policy Board , 224 Conn. 693, 698, 620 A.2d 780 (1993) ; and that subject matter jurisdiction, if lacking, may not be conferred by the parties, explicitly or implicitly. Hayes v. Beresford , 184 Conn. 558, 562, 440 A.2d 224 (1981) ( [i]t is hornbook law that the parties cannot confer subject matter jurisdiction on a court by consent, waiver, silence or agreement)." (Internal quotation *534 marks omitted.) Williams v. Commission on Human Rights & Opportunities , supra, 257 Conn. at 266, 777 A.2d 645. We are aware of no authority, however, for the proposition that the rules governing when an action accrues for purposes of applying a statute of limitations do not apply to statutorily created causes of action. As we indicated, moreover, although we have not previously had occasion to apply them in a wrongful death action, we cannot perceive of any justification for not applying those rules to such actions.
We therefore must address the plaintiffs' contention that the trial court, in granting the defendants' motions to dismiss, improperly resolved disputed jurisdictional facts without affording the plaintiffs an opportunity either to engage in limited discovery or to present evidence in furtherance of their claim that the statute of limitations was tolled by the continuing course of conduct and continuing course of treatment doctrines. We agree with the plaintiffs with respect to the continuing course of conduct doctrine but disagree that the trial court incorrectly resolved their claims under the continuing course of treatment doctrine.
**273 Before addressing the merits of the plaintiffs' claim, however, we briefly address the defendants' contention that the plaintiffs waived the right to an evidentiary hearing by failing to request one in a timely manner. As we previously indicated, the trial court, in its memorandum of decision, observed that the plaintiffs had failed to present evidence in support of their tolling claims, stating in relevant part: "[The plaintiffs] mention in their memorandum in opposition to the motions to dismiss that they intend to demand an evidentiary hearing. However, they failed to present any evidence at the hearing at which the motions were argued." As the plaintiffs have explained, however, the trial court appears to have misread their opposing memorandum because they actually stated therein: "To the extent the court in making this jurisdictional determination considers anything other than the factual allegations contained in the plaintiffs' complaint, the plaintiff[s] request an evidentiary hearing to address any critical disputed issues of fact." Thus, contrary to the trial court's determination, the plaintiffs did not request an evidentiary hearing prior to oral argument; rather, it was the plaintiffs' position that their complaint alone was sufficient to establish the court's jurisdiction but that a hearing would be necessary if the court did not agree. As the plaintiffs maintain, "[i]t was the court, not the plaintiffs, who would [have] know[n] if that eventuality was to occur." We note, moreover, as we previously indicated, that the plaintiffs brought this apparent misunderstanding to the trial court's attention in their motion to reargue, which the trial court summarily denied. In light of this procedural history, we are persuaded that the plaintiffs' claim for an evidentiary hearing is preserved. But, even if it were not, the defendants do not dispute that the plaintiffs' challenge to the trial court's denial of their motion for limited discovery is preserved. As we previously indicated, the trial court, **274 Domnarski , J. , denied the plaintiffs' discovery motion on the basis of its conclusion that Kelly v. Albertsen , supra, 114 Conn. App. at 608, 970 A.2d 787, precluded such discovery prior to a ruling on the defendants' motions to dismiss. As we previously noted, however; see footnote 5 of this opinion; Conboy v. State , supra, 292 Conn. at 642, 974 A.2d 669, casts doubt on the vitality of Kelly to the extent that Kelly purported to bar pretrial discovery undertaken solely for the purpose of establishing jurisdictional facts. We turn, therefore, to the merits of the plaintiffs' claim that the trial court improperly denied both *535 their request for limited discovery and their request for an evidentiary hearing.
We previously have explained that "[t]rial courts addressing motions to dismiss for lack of subject matter jurisdiction ... may encounter different situations, depending on the status of the record in the case.... [L]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.... Different rules and procedures will apply, depending on the state of the record at the time the motion is filed.
"When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light.... In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader....
"In contrast, if the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss ... the trial court, **275 in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint.... Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts].... If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits ... or other evidence, the trial court may dismiss the action without further proceedings.... If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations ... or only evidence that fails to call those allegations into question ... the plaintiff need not supply counteraffidavits or other evidence to support the complaint ... but may rest on the jurisdictional allegations therein....
"Finally, [when] a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. Gordon v. H.N.S. Management Co. , 272 Conn. 81, 92, 861 A.2d 1160 (2004) ( [w]hen issues of fact are necessary to the determination of a court's jurisdiction ... due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses ...); Schaghticoke Tribal Nation v. Harrison , 264 Conn. 829, 833, 826 A.2d 1102 (2003) (same). Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits.... An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding [on the basis of] memoranda and documents submitted by the parties." (Citations omitted;
**276 emphasis omitted; footnotes omitted; internal quotation marks omitted.). Conboy v. State , supra, 292 Conn. at 650-54, 974 A.2d 669. In such circumstances, the court may also "in its discretion choose to postpone resolution of the jurisdictional question until the parties complete further discovery or, if necessary [and appropriate, postpone resolution until] a full trial on the merits has occurred." Id., at 653 n.16, 974 A.2d 669.
*536 As we previously indicated, the trial court concluded that the plaintiffs could not prevail under the continuing course of treatment doctrine because the plaintiffs had failed to allege or present evidence to establish that the defendants had treated or monitored the decedent for an identified condition following her discharge from the hospital. "To establish a continuous course of treatment for purposes of tolling the statute of limitations in medical malpractice actions, the plaintiff is required to prove" that (1) "he or she had an identified medical condition that required ongoing treatment or monitoring," (2) "the defendant provided ongoing treatment or monitoring of that medical condition after the allegedly negligent conduct, or ... the plaintiff reasonably could have anticipated that the defendant would do so," and (3) "the plaintiff brought the action within the appropriate statutory period after the date that treatment terminated." Grey v. Stamford Health System, Inc. , supra, 282 Conn. at 754-55, 924 A.2d 831.
We have also explained that "[t]he primary difference between the [continuing course of conduct and continuing course of treatment] doctrines is that the [continuous course of treatment doctrine] focuses on the plaintiff's reasonable expectation that the treatment for an existing condition will be ongoing, [whereas] the [continuing course of conduct doctrine] focuses on the defendant's duty to the plaintiff arising from his knowledge of the plaintiff's condition. As we have indicated, the policy underlying the continuous [course of]
**277 treatment doctrine is to allow the plaintiff to complete treatment for an existing condition with the defendant and to protect the physician-patient relationship during that period. Accordingly, when the plaintiff had no knowledge of a medical condition and, therefore, had no reason to expect ongoing treatment for it from the defendant, there is no reason to apply the doctrine.... In contrast, under the continuing course of conduct doctrine, if the defendant had reason to know that the plaintiff required ongoing treatment or monitoring for a particular condition, then the defendant may have had a continuing duty to warn the plaintiff or to monitor the condition, and the continuing breach of that duty tolls the statute of limitations, regardless of whether the plaintiff had knowledge of any reason to seek further treatment." (Citations omitted; emphasis omitted.) Id., at 755-56, 924 A.2d 831.
Application of these principles to the present facts leads us to conclude that the plaintiffs cannot prevail under the continuing course of treatment doctrine because, in addition to the reasons cited by the trial court, it is undisputed that the decedent was never advised by any of the defendants that Wolek had diagnosed a suspicious mass in her left lung. Never having been advised about the mass, the decedent could not possibly have expected the defendants to provide ongoing treatment for it, and the plaintiffs do not claim that the defendants provided any such treatment.
Whether the plaintiffs can prevail under the continuing course of conduct doctrine is a different matter, however, and one that the trial court properly could not resolve without conducting an evidentiary hearing or allowing the plaintiffs to conduct limited discovery directed toward establishing the court's jurisdiction. Indeed, the present case is precisely the sort of case we had in mind in Conboy when we observed that "the question of jurisdiction [may be so] intertwined with **278 the merits of the case ... [that] a court cannot resolve the jurisdictional question without a hearing to evaluate those merits"; *537 Conboy v. State , supra, 292 Conn. at 653, 974 A.2d 669 ; or "until the parties complete further discovery or, if necessary [and appropriate], a full trial on the merits has occurred." Id., at 653 n.16, 974 A.2d 669. This is so because the issues of whether the court has jurisdiction over the plaintiffs' claims and whether the plaintiffs ultimately can prevail on those claims appear to turn on the same question: did the defendants know about the suspicious mass in the decedent's lung prior to the expiration of the statute of repose? Contrary to the determination of the trial court, the facts that may illuminate the answer to that question are very much in dispute. For example, as the plaintiffs argued in the trial court, although Tobin's affidavit states that she was never informed about the mass, a nurse's note in the decedent's hospital file indicates otherwise. Similarly, although Middlesex Hospital argues that there is no evidence that any of its employees were ever informed about the mass, that same nurse's note appears to contradict this claim because it states that the decedent's X-ray results were communicated to Tobin at 2:30 p.m. on November 5, 2007. In light of this evidence, we agree with the plaintiffs that the trial court's finding that there was no evidence in the record that Tobin knew about the decedent's abnormal chest X-ray is simply incorrect.
We also agree with the plaintiffs that the trial court's findings with respect to Tobin and Wolek are irreconcilable and further indication of the need for an evidentiary hearing or limited discovery, at the least, to determine jurisdictional facts. As we previously indicated, the trial court concluded that the continuing course of conduct doctrine was inapplicable to Tobin because it was undisputed that Tobin was never informed about the mass. At the same time, the trial court concluded that the doctrine was inapplicable to Wolek because it was **279 undisputed that Wolek had communicated the decedent's X-ray results to Tobin. Having reviewed the entire record, we agree with the plaintiffs that the only facts that were undisputed in the trial court are that Wolek diagnosed the decedent with congestive heart failure and a mass in her left lung, Wolek wrote in his report that his findings were "called to the [hospital] floor at the time of the reading," and a note in the decedent's hospital file indicates that the decedent's X-ray results were reported to Tobin at approximately 2:30 p.m. It is also undisputed that Tobin, under Blancaflor's supervision, prescribed "Lasix 20 mg IV" to treat a condition or conditions relating to the decedent's congestive heart failure.
What is very much in dispute, however, and what the plaintiffs have a right to explore by whichever method the trial court deems appropriate, that is, limited discovery or an evidentiary hearing, is the identity of the hospital employee who spoke to Wolek when he called the hospital floor at the time of the reading, the information that Wolek may have imparted to that individual, and the information that that individual, in turn, may have imparted to Tobin.[7] The plaintiffs also must be permitted to explore whether the decedent's X-ray or Wolek's X-ray report was ever sent to any of decedent's health-care providers and, if so, when and to whom it was sent. In short, the plaintiffs have a right to *538 request from the defendants any information that bears directly on the question of what the defendants knew with respect to the decedent's November 5, 2007 chest X-ray and, of course, when they knew it. **280 The judgment in Docket No. SC 19619 is reversed and the case is remanded for further proceedings consistent with this opinion; the appeal in Docket No. SC 19749 is dismissed.
In this opinion the other justices concurred.

General Statutes § 52-555 provides in relevant part: "(a) In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date of death, and except that no such action may be brought more than five years from the date of the act or omission complained of...."

The plaintiffs appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

This court has long recognized that, in certain circumstances, a statute of limitations may be tolled under the continuous course of treatment or the continuing course of conduct doctrine, thereby extending the time within which the plaintiff must commence his or her action. E.g., Blanchette v. Barrett , 229 Conn. 256, 265, 640 A.2d 74 (1994), overruled in part on other grounds by Grey v. Stamford Health System, Inc. , 282 Conn. 745, 924 A.2d 831 (2007). In the medical malpractice context, the continuing course of conduct doctrine requires the plaintiff to prove that the defendant (1) "committed an initial wrong [against] the plaintiff," (2) "owed a continuing duty to the plaintiff that was related to the alleged original wrong," and (3) "continually breached that duty." Witt v. St. Vincent's Medical Center , 252 Conn. 363, 370, 746 A.2d 753 (2000). To prevail under the continuing course of treatment doctrine, the plaintiff must prove that (1) "he or she had an identified medical condition that required ongoing treatment or monitoring," (2) "the defendant provided ongoing treatment or monitoring of that medical condition after the allegedly negligent conduct, or ... the plaintiff reasonably could have anticipated that the defendant would do so," and (3) "the plaintiff brought the action within the appropriate statutory period after the date that treatment terminated." Grey v. Stamford Health System, Inc. , supra, at 754-55, 924 A.2d 831.

We note that the present case involves two appeals stemming from two separate actions that subsequently were consolidated in the trial court. In the second appeal (Docket No. SC 19749), the plaintiffs claim that the trial court improperly dismissed their second wrongful death action that they brought against the defendants on the ground that the plaintiffs were collaterally estopped from relitigating the issue of whether their claims against the defendants were timely under § 52-555. Our resolution of the first appeal renders the second appeal moot, and, therefore, we dismiss the plaintiffs' second appeal. We reverse only the judgment in the plaintiffs' first wrongful death action.

In Kelly , the Appellate Court noted the absence of any authority requiring "a court to allow a plaintiff to conduct discovery to meet the burden of alleging facts that clearly demonstrate that the court has subject matter jurisdiction prior to the court's ruling on a motion to dismiss challenging jurisdiction. Indeed, [the] policy that all other action in a case 'comes to a halt' once the issue of subject matter jurisdiction has been raised counsels against the allowance of discovery prior to the court's determination of the jurisdictional issue." Kelly v. Albertsen , supra, 114 Conn. App. at 608, 970 A.2d 787. As we explain more fully hereinafter, however, Kelly was decided about two months before this court issued its decision in Conboy v. State , supra, 292 Conn. at 642, 974 A.2d 669, which held that "[w]hen the jurisdictional facts are intertwined with the merits of the case, the court may in its discretion choose to postpone resolution of the jurisdictional question until the parties complete further discovery" directed at resolving the jurisdictional question, "or, if necessary [and appropriate, postpone resolution until] a full trial on the merits has occurred." Id., at 653 n.16, 974 A.2d 669.

Notably, several other state legislatures have amended their wrongful death statutes to overrule a prior judicial interpretation that the statutes' limitation period implicates a court's subject matter jurisdiction. See, e.g., Va. Code Ann. § 8.01-235 (2015) ("The objection that an action is not commenced within the limitation period prescribed by law can only be raised as an affirmative defense specifically set forth in a responsive pleading. No statutory limitation period shall have jurisdictional effects and the defense that the statutory limitation period has expired cannot be set up by demurrer. This section shall apply to all limitation periods, without regard to whether or not the statute prescribing such limitation period shall create a new right."); Goldsmith v. Learjet, Inc. , 90 F.3d 1490, 1494 (10th Cir. 1996) ("[i]n 1963 the Kansas [l]egislature restructured the wrongful death statute, severing the two-year statute of limitations from the action's other substantive provisions, and relocated the limitation with the state's general statute of limitation provision"); Kinlaw v. Norfolk Southern Railway Co. , 269 N.C. 110, 119, 152 S.E.2d 329 (1967) ("[t]he effect of [a 1951] amendment" to wrongful death statute that removed provision fixing time period within which wrongful death action must be brought so as to make action subject to generally applicable statute of limitations "was to make the time limitation a statute of limitations and no longer a condition precedent to the right to bring and maintain the action").

We find no merit in Wolek and Radiologic Associates' assertion that the trial court's judgment should be affirmed as to them because Wolek fulfilled his duty to the decedent by reporting his findings to the hospital floor. As we have explained, the record is far from clear as to whether Wolek reported both of his findings to the hospital floor or only one of them because only the congestive heart failure diagnosis appears in the decedent's medical records corresponding to her November, 2007 hospital stay.